**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ORIGEN.AI, INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL BADAWI <br><br> Defendant. | Case No. _____ <br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

OriGen.AI, Inc. ("OriGen" or the "Company"), by and through its undersigned attorneys, upon knowledge with respect to its own acts and upon information and belief as to other matters, for its complaint avers as follows:

**Nature of the Action**

1.  This is an action to stop a former employee from delivering stolen trade secrets amounting to the blueprint of OriGen's entire business to a direct competitor.

2.  OriGen is a pioneer in the use of artificial intelligence for the energy sector, having invested years and millions of dollars developing the leading AI-driven reservoir simulation platform, known as Proteus. *See* Declaration of Ruben Rodriguez Torrado ("Torrado Decl.") ¶ 5.

3.  Defendant Daniel Badawi, a former OriGen Physics Informed Neural Network Engineer, resigned on February 2, 2026, to join a company called UniversalAGI. When he first revealed his planned departure, Badawi initially refused to identify the prospective employer in violation of Section 7 of his Confidential Information and Invention Assignment Agreement. When confronted with that contract term, Badawi identified the company repeatedly assured OriGen that his new employer was in a "different market" and did not compete with OriGen, and, therefore, did not violate his one-year non-competition agreement. *Id.* ¶ 14.

4. Those assurances were false. On February 6, 2026, four days after Badawi's departure, OriGen discovered that UniversalAGI was actively recruiting one or more "Founding Reservoir Engineer" to work directly with UniversalAGI's CEO to "build foundation AI models" "for physics simulation," to "[d]evelop systematic workflows to generate hundreds or thousands of reservoir scenarios" that will "train our foundation models," and to integrate artificial intelligence/machine learning "proxy/surrogate models" for "physics simulation" "into subsurface workflows." Torrado Decl. ¶¶ 26-27 & Ex. F. In short, UniversalAGI's reservoir engineer job posting makes clear that it is recruiting engineers to build the exact technology Badawi built at OriGen.

5. Fearing the worst, OriGen launched a preliminary internal investigation. The results were alarming. On January 30, 2026—the same day Badawi disclosed to OriGen that he intended to accept a new job offer with a company he refused at that time to identify—he connected an unauthorized USB mass storage device to his OriGen laptop multiple times. *See* Declaration of Alberto Pumar Jiménez ("Pumar Decl.") ¶¶ 22–23.

6. Further, OriGen's preliminary forensic investigation revealed that Badawi had configured a personal Microsoft OneDrive folder labeled "Daniel – Personal" to sync with his work laptop. This folder contained a massive trove of OriGen's most sensitive trade secrets, including part of OriGen's computer source code, proprietary algorithms, encryption keys, and data from AI model experiments. *Id.* ¶ 16.

7. When confronted, Badawi lied. He claimed he only used the USB drive on Sunday, February 1 (a claim refuted by the computer's system logs) and feigned ignorance of the OneDrive sync, despite that folder containing a highly organized directory of OriGen's

2

proprietary projects.  *See* Declaration of John J. Powell ("Powell Decl.") ¶ 4; Pumar Decl. ¶¶ 29–31.

8.  Badawi further breached his contract by refusing to sign a truthful Termination Certification, and then, days later, executing a false certification under penalty of perjury claiming he possessed no OriGen data, even though, just a few hours earlier, he sent OriGen's counsel an email admitting that he still had access to the synced OneDrive folder and also had OriGen information on his phone.  *See* Declaration of David Castiñeira Areas ("Castiñeira Decl.") ¶¶ 12–16.

9.  Badawi is scheduled to commence employment with UniversalAGI on February 16, 2026.  Unless restrained by this Court, Badawi will inevitably use or disclose OriGen's stolen trade secrets, allowing a direct competitor to clone OriGen's proprietary technology overnight and causing irreparable harm.  *See* Torrado Decl. ¶¶ 42–43.

## Parties

10.  Plaintiff OriGen.AI, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 221 River Street, 9th floor, Hoboken, NJ .  OriGen maintains an office in Hoboken, New Jersey, where Defendant was employed.

11.  Defendant Daniel Badawi is an individual and a citizen of the State of New Jersey, residing at 160 South Street, Apt. 1, Jersey City, NJ 07307.  See Powell Decl., Ex. B (Feb. 8 Letter).

**Jurisdiction and Venue**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claim that they form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendant Badawi because he is a resident of New Jersey and the acts complained of herein, including the misappropriation of trade secrets and breach of contract, occurred while he was employed at Plaintiff's office in Hoboken, New Jersey.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**Relevant Facts**

**A. OriGen's Trade Secrets and Proprietary Technology**

16. OriGen is a leader in AI-driven physics simulation for the energy industry. Its flagship platform, Proteus, uses Physics-Informed Neural Networks ("PINNs") to simulate reservoir behavior thousands of times faster than traditional methods. *See* Torrado Decl. ¶¶ 5–6.

17. OriGen's competitive advantage relies entirely on its proprietary technology, including its specific neural network architectures, training data models, and source code. These assets are closely guarded trade secrets. *Id.* ¶ 6.

18.     OriGen protects these trade secrets through strict security measures, including SOC II Type 2 certification, data access policies, and strict confidentiality agreements for all employees. *Id.* ¶ 10.

**B.     Badawi's Employment and Contractual Obligations**

19.     OriGen hired Badawi on January 30, 2025, as a Physics Informed Neural Networks Engineer. *Id.* ¶ 7. In this role, Badawi was granted high-level access to OriGen's source code, data models, and algorithms. *Id.*

20.     As a condition of his employment, Badawi executed a Confidential Information and Invention Assignment Agreement ("CIIAA") on January 30, 2025.  *Id.* ¶ 8; *see also* Torrado Decl., Ex. A (OriGen Offer Letter) at Attachment A (CIIAA).

21.     The CIIAA contains several important provisions.

22.     <u>Confidentiality</u>: Under Section 3 of the CIIAA, Badawi agreed to hold in strictest confidence all of OriGen's "technical data, trade secrets... software codes and designs, algorithms... [and] research." *See* Torrado Decl., Ex. A (OriGen Offer Letter) at Attachment A (CIIAA) at § 3.

23.     <u>Return of Property</u>: Under Section 5, Badawi agreed that upon termination, he would "immediately deliver to the Company... all of the property and equipment of the Company," including all "electronic media" and "computer programs."  *Id.* § 5.

24.     <u>Non-Compete</u>: Under Section 8, Badawi agreed that for a period of twelve months following termination, he would not "directly or indirectly... engage in... any business that competes with the business of the Company."  *Id.* § 8.

25.     <u>Termination Certification</u>: Badawi agreed to sign a "Termination Certification" confirming his compliance with these terms upon his departure.  *Id.* Ex. B.

26.     Injunctive Relief and Bond:  In the CIIAA, Badawi agreed that OriGen is entitled to obtain injunctive relief in the event of a breach or threatened breach of the CIIAA.

C.      **The Scheme to Misappropriate Trade Secrets**

27.     On Friday, January 30, 2026, Badawi informed OriGen COO David Castiñeira that he had received a job offer from another company.  Badawi demanded a $50,000 raise and immediate relocation to Houston, giving OriGen until Sunday to respond.  Castiñeira Decl. ¶ 2.

28.     Badawi refused to name the company but forwarded a redacted offer letter.  *Id.* ¶¶ 2–4.

(1)     Unauthorized USB Storage Device Connection

29.     Unbeknownst to OriGen, that same evening, January 30, 2026, Badawi connected an unauthorized USB storage device to his OriGen.AI laptop.

30.     Forensic analysis of the Windows system logs (setupapi.dev.log) on Badawi's laptop conducted after his departure confirms that at 8:53 p.m., a USB mass storage device identified as "General UDisk" was connected to the machine. *See* Pumar Decl. ¶ 22.

31.     The logs show the device was connected multiple times over the following minutes.  *Id.* ¶ 23.

32.     This unauthorized connection occurred just two hours after Badawi issued his ultimatum to Dr. Castiñeira.  *See* Torrado Decl. ¶ 36.

33.     Upon information and belief, Badawi connected the unauthorized USB drive for purposes of surreptitiously saving OriGen data to that device.

(2)     The Cloud Exfiltration

34.     Similarly unknown to OriGen until after Badawi's departure, Badawi also configured a folder on his work laptop entitled "Daniel – Personal" to sync directly with a

6

personal Microsoft OneDrive account linked to a personal email address, danielbadawi8@gmail.com.  *See* Pumar Decl. ¶¶ 11, 14.

35. Contrary to its name, this folder contained massive amounts of OriGen's proprietary data, including:

    a. *Source Code*: Part of OriGen's computer source code;

    b. *Encryption Keys*: A subfolder named "keys" containing keys to access OriGen's development virtual machines (*id.* ¶ 18(b));

    c. *Algorithms*: Novel unpublished algorithms and deep neural network architectures (*id.* ¶ 16);

    d. *Reservoir Data*: Highly sensitive files such as scalers.npy, PVDO.npy, and SATNUM.npy used for reservoir modeling (*id.* ¶ 18(c)).

36. Green checkmarks visible in forensic screenshots confirm these files were successfully uploaded to Badawi's personal cloud account. *Id.* ¶ 19; *see also* Pumar Decl. Ex. A (Screenshots).

**D.  Badawi's Resignation and Deception Regarding His New Employer**

37. On Sunday, February 1, 2026, Dr. Torrado invoked Section 7 of the CIIAA, which required Badawi identify his new employer.  *See* Torrado Decl. ¶ 13 & Ex. C.

38. Badawi replied via email, identifying the company as "UniversalAGI."  *See* Torrado Decl. ¶ 14 & Ex. D.

39. To induce OriGen not to enforce the non-compete, Badawi falsely represented that UniversalAGI was involved in "hydrodynamics and aerodynamics" and was in a "different market." *Id.* ¶ 14; Ex. D.

7

40. Relying on these representations, OriGen accepted Badawi's resignation on February 2, 2026. *Id.* ¶¶ 15–17.

### E. Badawi's Obstruction Regarding the Termination Certification

41. Upon his resignation, Badawi was required to "deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, . . . materials, . . . other documents or property, or reproductions of any of the aforementioned items . . . developed by me pursuant to the Relationship or otherwise belonging to the Company." Torrado Decl. Ex. A at Att. A (CIIAA) at § 5.

42. Badawi was also required to sign the Termination Certification. *See* Torrado Decl. Ex. A at Attachment A (CIIAA) at § 6 (obligation to sign termination cert.).

43. On February 2, 2026, Dr. Castiñeira sent the document via DocuSign. *See* Castiñeira Decl. ¶ 7 & Exs. B & C.

44. On February 3, Badawi emailed Dr. Castiñeira stating: "I have signed the document." *Id.* ¶ 9; Ex. D.

45. This was a lie. DocuSign logs prove that while Badawi viewed the document on February 3, he closed it without signing. *Id.* ¶ 10.

46. As of February 9, the document remained unsigned. *Id.* ¶ 13.

### F. Discovery of the Competitor Status and Forensic Evidence

47. On February 6, 2026, OriGen discovered that UniversalAGI had posted a job listing for a "Founding Reservoir Engineer" to build a "PINN-surrogate model"—an exact description of OriGen's business. *See* Torrado Decl. ¶¶ 26–27; Ex. F.

48. Realizing Badawi had misrepresented the nature of his new employment, OriGen conducted the forensic review described above, discovering the source code synced to Badawi's personal OneDrive and the history of USB connections. *Id.* ¶¶ 30–35.

G. **Pre-Litigation Confrontation and Badawi's Continued Falsehoods**

49. On February 8, 2026, OriGen's counsel sent a Cease-and-Desist letter to Badawi. *See* Powell Decl. ¶ 3; Ex. A.

50. Badawi responded on February 9, 2026. In his email, he admitted to having the USB drive and did not deny the connection of the OneDrive to his work laptop. However, he made several demonstrably false assertions in an apparent effort to cover his tracks. *See* Powell Decl. ¶ 3; Ex. B (Badawi email) & Ex. L (refutation email).

51. For example, Badawi claimed he connected the USB drive on Sunday, February 1. System logs prove it was Friday, January 30 and that no connection was made February 1. *See* Powell Decl. ¶ 6, Ex. L (Refutation Email); Pumar Decl. ¶ 31.

52. Badawi claimed he was "never aware" of the OneDrive sync. But the folder, which appeared on his work laptop owned and issued by OriGen, was linked to a personal email address containing his entire name (daniel.badawi8@gmail.com), was immediately visible from the Windows Explorer application on his work laptop, and contained a highly organized body of materials organized into subfolders, including a folder entitled "projects" with subfolders named after specific reservoirs. *See* Powell Decl., Ex. L & Pumar Decl. Ex. A.

53. He claimed again that he had "signed the termination certification," even though at the time of his February 9, 2026 email that was still not true. (Badawi did not actually sign it until 7:47 p.m. that evening, *after* sending the email.) *See* Castiñeira Decl. ¶ 16.

54. Despite admitting he still has access to the OneDrive folder containing OriGen's source code, Badawi refused OriGen's proposal that he sign a new certification promising that he would abide by his CIIAA and would not accept or commence employment at UniversalAGI. He also refused OriGen's proposal that he sign a certification stating that he would allow for independent forensic verification of data deletion. *See* Powell Decl. ¶ 4.

## Claims for Relief

### COUNT I
### Breach of Contract
### (Confidential Information and Invention Assignment Agreement)

55. Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

56. The CIIAA is a valid and enforceable contract between OriGen and Badawi. *See* Torrado Decl. Ex. A.

57. Badawi breached Section 3 (Confidentiality) of the CIIAA by uploading OriGen's source code, algorithms, and technical data to his personal OneDrive account and copying data to a USB mass storage device. *See* Pumar Decl. ¶¶ 16, 22.

58. Badawi breached Section 5 (Return of Company Documents) by failing to return or destroy these materials upon his termination and keeping them in his personal cloud storage and devices. *Id.* ¶ 19.

59. Badawi breached Section 8 (Non-Compete) by accepting employment with UniversalAGI, a company that is actively recruiting to build a competing PINN-based reservoir simulation platform during the restricted period. *See* Torrado Decl. ¶¶ 26–29.

60. Badawi breached the Termination Certification requirement by repeatedly lying about its execution and then signing a certification on February 9 that was materially false

10

(certifying return of property while admitting possession of the OneDrive data). *See* Castiñeira Decl. ¶ 16.

61. As a direct and proximate result of Badawi's breaches, OriGen has suffered and will continue to suffer irreparable harm, including the loss of its trade secrets and competitive advantage.

## COUNT II
### Defend Trade Secrets Act
### (18 U.S.C. § 1836 et seq.)

62. Plaintiff repeats and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

63. OriGen is the owner of the trade secrets described herein, including its Proteus source code, neural network architectures, and proprietary algorithms (the "Trade Secrets"). *See* Torrado Decl. ¶ 6.

64. These Trade Secrets relate to products and services used in, or intended for use in, interstate and foreign commerce.

65. OriGen has taken reasonable measures to keep this information secret, including SOC II compliance, access controls, and requiring confidentiality agreements. *Id.* ¶ 10.

66. The Trade Secrets derive independent economic value from not being generally known to, or readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

67. Badawi misappropriated these Trade Secrets by acquiring them through improper means (unauthorized USB downloads and syncing to personal cloud storage) and retaining them after his employment in violation of his contractual duties.

68. Badawi intends to use these Trade Secrets for the benefit of UniversalAGI, a direct competitor.

69. Badawi's conduct was willful and malicious, warranting exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3).

## COUNT III
## New Jersey Trade Secrets Act
## (N.J.S.A. 56:15-1 *et seq.*)

70. Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

71. The information misappropriated by Badawi constitutes "Trade Secrets" under N.J.S.A. 56:15-2.

72. Badawi misappropriated these Trade Secrets by acquiring them through improper means and disclosing or using them (or threatening to do so) without express or implied consent.

73. As a proximate result of Badawi's misappropriation, OriGen is threatened with irreparable injury for which there is no adequate remedy at law.

## COUNT IV
## Breach of Duty of Loyalty

74. Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

75. As an employee of OriGen, Badawi owed a duty of loyalty to the Company.

76. Badawi breached this duty by, among other things:

    a. Exfiltrating proprietary data to personal devices/accounts while still employed;

      b.      Negotiating employment with a competitor while accessing OriGen's most sensitive files; and

      c.      Deceiving OriGen regarding the nature of his new employment to avoid scrutiny. *See* Torrado Decl. ¶¶ 11–14, 30–36.

77.    As a result of this breach, OriGen has been damaged.

## COUNT V
## Computer Fraud and Abuse Act
## (18 U.S.C. § 1030)

78.    OriGen repeats and realleges the foregoing paragraphs as if fully set forth here.

79.    Badawi knowingly and with intent to defraud accessed a protected computer without authorization, or in excess of authorized access, by connecting a prohibited USB device and syncing proprietary code to a personal account for non-business purposes.

80.    Badawi obtained information from a protected computer that he was not entitled to obtain, specifically the contents of the "Daniel - Personal" folder, in furtherance of a fraud.

## COUNT VI
## New Jersey Computer Related Offenses Act
## (N.J.S.A. § 2A:38A-3)

81.    OriGen repeats and realleges the foregoing as though fully set forth herein.

82.    Badawi purposely and without authorization took, copied, and accessed data, databases, and computer software from OriGen's computer system.

83.    Specifically, the transfer of the Proteus source code to his personal OneDrive constitutes a taking of data under the Act.

84.    OriGen has suffered damages as a result of this violation, including the costs of forensic investigation and legal enforcement.

## COUNT VII
## Fraud / Fraudulent Inducement

85. OriGen repeats and realleges the foregoing as though fully set forth herein.

86. Badawi knowingly made material misrepresentations of fact to OriGen, specifically:

    a. On February 1, 2026, that his prospective employer during the restriction period in in the CIIAA was in a "different market" than OriGen;

    b. On February 2, 2026, that his prospective employer during the restriction period in in the CIIAA was in a different market than OriGen and would not compete with OriGen;

    c. That he connected the USB drive on February 1 rather than January 30;

    d. That he had signed his termination certification on February 3 when he had not; and

    e. That he had returned all data on February 9 while retaining the OneDrive contents.

87. Badawi made these misrepresentations with the intent to induce OriGen to refrain from taking immediate legal action to secure its property.

88. OriGen relied on these representations to its detriment by delaying forensic intervention.

## **Prayer for Relief**

WHEREFORE, Plaintiff OriGen.AI, Inc. respectfully requests that this Court enter Judgment in its favor and against Defendant Daniel Badawi as follows:

    A. Issuing a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction enjoining Defendant Badawi, and all those acting in concert with him, from:

       1.      Using, disclosing, or transmitting any of OriGen's Confidential Information or Trade Secrets;

       2.      Commencing or continuing employment with UniversalAGI, Inc. or any other competitor for a period of 12 months as required by the CIIAA;

       3.      Accessing, modifying, or deleting any files on his personal devices or cloud accounts (including the danielbadawi8@gmail.com OneDrive) pending forensic imaging by a neutral third party;

B.      Ordering Defendant to immediately return all OriGen property and Trade Secrets;

C.      Ordering Defendant to submit his personal electronic devices and cloud account credentials to a forensic neutral for inspection and remediation;

D.      Awarding Plaintiff compensatory damages in an amount to be determined at trial;

E.      Awarding Plaintiff exemplary damages and attorneys' fees pursuant to the Defend Trade Secrets Act, the New Jersey Trade Secrets Act, and the CIIAA; and

F.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 16, 2026

*/s/ John J. Powell*
John J. Powell (*pro hac vice* forthcoming)
Edward J. Heffernan (*pro hac vice* forthcoming)
Anna Volkov (Bar ID #547712025)
MONTGOMERY McCRACKEN
   WALKER & RHOADS LLP
1735 Market Street
Philadelphia, Pennsylvania 19103
(215) 772-7298
jpowell@mmwr.com
eheffernan@mmwr.com
avolkov@mmwr.com

*Counsel for Plaintiff OriGen.AI, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORIGEN.AI, INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL BADAWI <br><br> Defendant. | Case No. _____ |

## VERIFICATION

I, Ruben Rodriguez Torrado, declare as follows:

1. I am the Chief Executive Officer of Plaintiff OriGen.AI, Inc.

2. I have read the foregoing Verified Complaint for Misappropriation of Trade Secrets and Injunctive Relief.

3. I have personal knowledge of the factual allegations contained in the Verified Complaint, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

4. Regarding the allegations of forensic evidence, including USB connectivity and cloud synchronization, I rely partly upon my own review of the relevant data and partly upon the reports and findings of OriGen's personnel, which I believe to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2026.

Ruben Rodriguez Torrado

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORIGEN.AI, INC., <br>                          Plaintiff, <br><br> v. <br><br> DANIEL BADAWI <br>                          Defendant. | Case No. _____ |

## **VERIFICATION**

I, Ruben Rodriguez Torrado, declare as follows:

1. I am the Chief Executive Officer of Plaintiff OriGen.AI, Inc.

2. I have read the foregoing Verified Complaint for Misappropriation of Trade Secrets and Injunctive Relief.

3. I have personal knowledge of the factual allegations contained in the Verified Complaint, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

4. Regarding the allegations of forensic evidence, including USB connectivity and cloud synchronization, I rely partly upon my own review of the relevant data and partly upon the reports and findings of OriGen's personnel, which I believe to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2026.

                                                              _____
                                                              Ruben Rodriguez Torrado