UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ORIGEN.AI, INC.,

                          Plaintiff,

        v.

DANIEL BADAWI

                          Defendant.

Case No. 2:26-cv-01558

**DECLARATION OF JOHN J. POWELL IN SUPPORT OF ORIGEN.AI, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER**

I, John J. Powell.  declare as follows:

1.      I am a Partner with Montgomery McCracken Walker & Rhoads LLP, and one of the attorneys at that firm responsible for its representation of OriGen.AI, Inc. in the above referenced matter.  I am admitted to practice in Pennsylvania and New York and am submitting a separate motion for pro hac vice admission to appear in the above captioned action.  I submit this declaration in support of OriGen's emergency motion for a temporary restraining order and preliminary injunction.

2.      I have personal knowledge of the facts in this Declaration, except as to those matters stated on information and belief, which I believe to be true.

Pre-Litigation Communications with Defendant Badawi

3.      On Sunday, February 8, 2026, I transmitted a cease-and-desist letter on behalf of OriGen to Defendant Daniel Badawi via email.  I copied the CEO of UniversalAGI, Inc. on that email.  The cease and desist letter outlined Mr. Badawi's breaches of his Confidential Information and Invention Assignment Agreement ("CIAA"), specifically regarding his misappropriation of trade secrets via USB devices and cloud storage, and his acceptance of

employment with a direct competitor, UniversalAGI, Inc. ("UniversalAGI").  A true and correct copy of this letter is attached hereto as **Exhibit A**.

4.      On Monday, February 9, 2026, at approximately 2:36 p.m., I received an email response from Mr. Badawi.  In this email, Mr. Badawi admitted to possessing a USB drive and a personal OneDrive account connected to his OriGen laptop but denied intentional misappropriation.  He claimed to have no idea how a folder on his company work laptop became synced with a personal OneDrive account controlled by the email address danielbadawi8@gmail.com.  He also admitted to having OriGen information on his phone and falsely asserted that he had already signed the Termination Certification sent to him on February 2, 2026, which was not true, as explained in the accompanying Declaration of David Castineira ("Castineira Decl.").  A true and correct copy of this email is attached hereto as **Exhibit B**.

5.      On Monday, February 9, 2026, at approximately 6:20 p.m., I sent an email to Ameer Haj Ali, the CEO of UniversalAGI.  I informed him that Mr. Badawi had refused to comply with OriGen's demands and that OriGen intended to seek immediate injunctive relief against both Mr. Badawi and UniversalAGI to prevent the misappropriation of trade secrets.  A true and correct copy of this email is attached hereto as **Exhibit C**.

6.      Shortly thereafter, at approximately 7:09 p.m. on February 9, 2026, I received a response from Rebecca Stuart of Sidley Austin LLP, stating that her firm represented UniversalAGI.  Ms. Stuart asserted that Mr. Badawi had not yet started employment and that UniversalAGI did not intend to use OriGen's confidential information.  A true and correct copy of this email is attached hereto as **Exhibit D**.

7.      Following these communications, at approximately 8:02 p.m. on February 9, 2026, OriGen personnel observed that the "Jobs" page on UniversalAGI's website—which had

previously listed a "Founding Reservoir Engineer" role identical to the one Mr. Badawi performed at OriGen—had been scrubbed and was completely blank. A screenshot of the blank webpage captured at that time is attached hereto as **Exhibit E**.

8.      On Tuesday, February 10, 2026, I initiated a meet-and-confer process with Ms. Stuart to discuss the imminent filing of this litigation and the forensic evidence OriGen had uncovered.

9.      At 3:17 p.m. on February 10, I emailed Ms. Stuart requesting a call that afternoon. A true and correct copy of this email is attached hereto as **Exhibit F**.

10.     Ms. Stuart replied at 3:24 p.m. agreeing to a call. A true and correct copy of this email is attached hereto as **Exhibit G**.

11.     At 4:33 p.m., I confirmed via email that I would call Ms. Stuart at the agreed time. A true and correct copy of this email is attached hereto as **Exhibit H**.

12.     During our telephonic meet-and-confer, I informed Ms. Stuart that OriGen possessed forensic screenshots of Mr. Badawi's work laptop showing a personal OneDrive folder synced to his personal email account containing OriGen's complete source code and encryption keys. We agreed that I would transmit these screenshots to her pursuant to a strict confidentiality agreement.

13.     At 6:36 p.m. on February 10, I sent an email to Ms. Stuart memorializing our agreement that the forensic screenshots would be designated "ATTORNEYS EYES ONLY" and used solely for the purpose of our settlement discussions. A true and correct copy of this email is attached hereto as **Exhibit I**.

14.     Upon receiving her confirmation, at 7:30 p.m. on February 10, I transmitted the forensic documents to Ms. Stuart. These documents included screenshots of the folder structure

on Mr. Badawi's laptop showing the exfiltrated source code and proprietary data.  A true and correct copy of this email (without the attached zip file content) is attached hereto as **Exhibit J**.

15.     Since providing this conclusive evidence of misappropriation on Tuesday evening, I have received no further substantive response from UniversalAGI regarding their intent to proceed with Mr. Badawi's employment.

16.     On the morning of February 12, 2026, at 8:45 a.m., I sent a follow-up email to Ms. Stuart noting that we had not heard back from UniversalAGI and that, given the imminent start date in Mr. Badawi's offer letter, OriGen had no choice but to file suit.  A true and correct copy of this email is attached hereto as **Exhibit K**.

17.     On the morning of Thursday, February 12, 2026, at approximately 9:35 a.m., I sent a substantive email to Mr. Badawi (copying counsel for UniversalAGI) refuting the factual assertions in his February 9 email based on OriGen's forensic review.  My email detailed the specific forensic evidence contradicting his claims regarding the timing of the USB connection and the nature of the OneDrive synchronization. A true and correct copy of this email is attached hereto as **Exhibit L**.

18.     On Friday, February 13, 2026, as OriGen was preparing to file its Verified Complaint and application for emergency injunctive relief, I received an email from counsel for Defendant Greg Mansell, Esq., requesting a call.  On Friday, I engaged in a series of discussions with Mr. Mansell in an effort to resolve this matter without the need for Court involvement.  These discussions resulted in a brief standstill agreement.   At 8:45 p.m. on Friday, February 13, I sent an email to Mr. Mansell memorializing our agreement: Mr. Badawi agreed that he would not commence work at UniversalAGI on Monday, February 16, and would not access, alter, delete, copy, disclose, or transmit any data on the personal OneDrive account linked to

daniel.badawi8@gmail.com, the USB drive at issue, or any other OriGen confidential information through the end of Monday. In exchange, OriGen agreed to hold off on filing its federal complaint and emergency motion through the end of Monday. Mr. Mansell replied at 9:01 p.m. that same evening, stating: "I am confirming we are in agreement." A true and correct copy of this February 13, 2026 email exchange is attached hereto as **Exhibit M**.

19.     Following that agreement, OriGen held off on filing its papers. On Monday afternoon, February 16, 2026, at 4:08 p.m., following consultations with my client, I sent Mr. Mansell an email outlining OriGen's minimal acceptable terms to avoid litigation. Those terms required Mr. Badawi to, among other things: (1) honor his non-competition agreement and confirm he would not commence work at UniversalAGI; (2) submit his devices and cloud accounts to a forensic examination at his cost and place $25,000 into escrow to secure those costs; and (3) produce his communications with UniversalAGI to allow OriGen to assess whether any trade secrets had been disclosed. A true and correct copy of my February 16, 2026 email is attached hereto as **Exhibit N**.

20.     Those negotiations failed. At 10:02 p.m. on Monday, February 16, 2026, Mr. Mansell responded via email. In his response, he categorically refused to honor the twelve-month non-competition covenant (claiming instead that Mr. Badawi was "laid off" and "terminated without cause") and refused to produce Mr. Badawi's communications with UniversalAGI. He also confirmed that OriGen's files are currently residing in a Microsoft OneDrive account tied to Mr. Badawi, though he claimed this exfiltration was merely an "inadvertent" automatic sync triggered by logging into a personal Microsoft Office subscription on his work laptop. Mr. Mansell then provided a counterproposal. A true and correct copy of Mr. Mansell's February 16, 2026 email is attached hereto as **Exhibit O**.

5

21.     On February 17, 2026 at 10:29 a.m., I replied to counsel for Mr. Badawi, noting that in his of February 16 he continues to refuse to honor and abide by his non-competition covenant or permit OriGen to verify his communications with his new employer.  I also explained that Badawi's allegation that he accidentally synced a huge volume of OriGen trade secrets as the result of using Microsoft Office is inconsistent with facts relayed by my client about the software Badawi relied upon at OriGen.  Further I explained that Badawi resigned and was not terminated, as his counsel's email of February 16 suggests.  I noted that in OriGen's view extra-judicial negotiations have reached a definitive impasse, and that OriGen is therefore proceeding with the immediate filing of its Complaint and Motion for a Temporary Restraining Order today, Tuesday, February 17, 2026.  A copy of my February 17, 2026 email to Badawi's counsel is attached as **Exhibit P**.

I declare under penalty of perjury under the laws of the State of New Jersey and the United States that the foregoing is true and correct.

Executed on February 17, 2026.

_____
John J. Powell

### List of Exhibits to Powell Declaration

Exhibit A    Cease and desist letter from John Powell to Daniel Badawi, February 8, 2026 (Cease and Desist)

Exhibit B    Email from Daniel Badawi to John Powell, February 9, 2026, 2:36 p.m.

Exhibit C    Email from John Powell to Ameer Haj Ali, February 9, 2026, 6:20 p.m.

Exhibit D    Email from Rebecca Stuart to John Powell, February 9, 2026, 7:09 p.m.

Exhibit E    Screenshot of UniversalAGI "Jobs" webpage, February 9, 2026, 8:02 p.m.

Exhibit F    Email from John Powell to Rebecca Stuart, February 10, 2026, 3:17 p.m.

Exhibit G    Email from Rebecca Stuart to John Powell, February 10, 2026, 3:24 p.m.

Exhibit H    Email from John Powell to Rebecca Stuart, February 10, 2026, 4:33 p.m.

Exhibit I    Email from John Powell to Rebecca Stuart, February 10, 2026, 6:36 p.m.

Exhibit J    Email from John Powell to Rebecca Stuart, February 10, 2026, 7:30 p.m.

Exhibit K    Email from John Powell to Rebecca Stuart, February 12, 2026, 8:45 a.m.

Exhibit L    Email from John Powell to Daniel Badawi, February 12, 2026, 9:35 a.m.

Exhibit M    Email exchange between John Powell and Greg Mansell, February 13, 2026, 8:45 p.m. and 9:01 p.m.

Exhibit N    Email from John Powell to Greg Mansell, February 16, 2026, 4:08 p.m.

Exhibit O    Email from Greg Mansell to John Powell, February 16, 2026, 10:02 p.m.

Exhibit P    Email from John Powell to Greg Mansell, February 17, 2026, 10:29 a.m.

**Powell Decl. Ex. A**



**MONTGOMERY McCRACKEN**

ATTORNEYS AT LAW

**John J. Powell**
Partner

437 Madison Avenue
New York, NY 10022
Tel: 212-867-9500

1735 Market Street
Philadelphia, PA 19103
Tel: 215-772-1500

Direct Dial:     215-772-7298
Cell:     570-878-4176
Email:     jpowell@mmwr.com

February 8, 2026

*BY EMAIL*

Daniel Badawi, Ph.D.
160 South Street, Apt. 1
Jersey City NJ 07307
daniel.db1988@gmail.com
danielbadawi8@gmail.com

Re:     <u>Breach of Obligations to OriGen.AI, Inc.</u>

Dear Daniel:

We represent OriGen.AI, Inc. ("OriGen" or the "Company") in connection with extremely serious concerns regarding your breach of your legal obligations and state and federal laws with respect to OriGen's confidential, proprietary, and trade secret information. These violations pose a severe threat to OriGen's property and competitive interests. I write to demand that you take immediate action necessary to avoid litigation to prevent irreparable and catastrophic harm to OriGen as the result of your theft of a complete copy of OriGen's source code for its market leading AI-driven reservoir simulation platform, Proteus, and other extremely valuable trade secrets and confidential information last week by means of a personal cloud account synced to a folder on your OriGen laptop.

The facts as we understand them are these. You joined OriGen on January 30, 2025, as a junior Physics Informed Neural Networks Engineer in the Company's New Jersey office, reporting to OriGen AI Team Lead Alberto Pumar. Your responsibilities involved assisting in the research and development of techniques including mathematical algorithms, data models, and AI solutions used in OriGen's market leading AI-driven reservoir simulation platform, Proteus. As a condition of your employment, you executed a written Confidential Information and Invention Assignment Agreement with OriGen (the "CIAA") effective January 30, 2025. **Ex. 1**. Under the CIAA, you promised, among other things, to:

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 2

- Maintain at all times and into perpetuity the strict confidentiality of OriGen's "software, source code, data, formulas, algorithms, and trade secrets" and its other Confidential Information.

- "Deliver to" OriGen "all of the property and equipment of the Company" in your possession, custody or control within 24 hours after termination of your employment, including but not limited to "any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof."

- Abide by the CIAA's reasonable non-competition and non-solicitation covenants, in which you promised not to work for a company engaged in a business similar to OriGen's and not to solicit any of OriGen's customers, employees, or contractors to join your new employer for one year after termination of your employment with OriGen.

- Execute and return to OriGen, within 24 hours of separation from employment, a signed copy of the Termination Certificate attached to the CIAA, stating under penalty of perjury that you have returned all OriGen Confidential Information and that you know about and will comply with all of your post-employment obligations under the CIAA, including non-competition and non-solicitation.

OriGen maintains and obtains annually certification of its compliance with the onerous SOC II Type 2 requirements for data security. Among other things, this requires OriGen employees to attend regular trainings concerning data and systems security and to regularly reaffirm compliance with OriGen's practices and policies. You reaffirmed and certified your understanding and compliance with OriGen's Security Access Control Policy as recently as October 2025. *See* **Ex. 2** (SAC Policy); **Ex. 3** (personal records of training and acknowledgment).

On Friday, January 30, 2026 (exactly one year after executing your CIAA with OriGen), at approximately 10:00 a.m., you received a new job offer. At approximately 6:30 p.m., you contacted OriGen's COO David Castineira Areas and informed him that you had received a job offer with a higher salary. Apart from general assurances that the new employer did not compete with OriGen, you refused to describe the new job or reveal the identity of the new employer. You offered to stay at OriGen if the Company would provide you a substantial raise and approve your relocating to Texas. You gave OriGen 24 hours to consider your proposal.

At 8:53 p.m., you attached an unauthorized USB device to your work laptop multiple times and saved OriGen files containing the Company's proprietary trade secrets, including source code, and other extremely sensitive confidential information. OriGen's preliminary investigation has included reviewing Windows system logs (specifically a setupapi.dev.log) for your OriGen laptop. These logs record hardware installation activity, tracking when new hardware, such as a USB drive, is connected to the computer and the operating system installs the necessary drivers to read it. Our review of these logs to date shows several separate instances

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 3

on the evening of January 30, 2025 when the device was connected to the computer.  Our review to date has identified no information suggesting that your use of such a device was a matter of routine.  On the contrary, Company policies on which you received regular trainings unambiguously forbid the use of such devices.  *Id.*

On Sunday, February 1, OriGen CEO Ruben Rodriguez Torrado invoked the Company's right under CIAA Section 7 to obtain information about the identity of your prospective new employer upon request.  Dr. Torrado also requested confirmation that that you had properly informed the prospective employer of your restrictive covenants with OriGen.  In your reply a few hours later, you confirmed that you understood your obligations under the restrictive covenants, identified your prospective employer as UniversalAGI, and repeatedly assured OriGen that UniversalAGI did not compete with OriGen because, according to your February 1 email, UniversalAGI was a company "involved in hydrodynamics and aerodynamics (CFD)."  You argued that this placed the company "in a different market" from OriGen and thus would not violate the CIAA.  You added that you "greatly love and forever appreciate" OriGen, and emphasized "as I said many times, not now not in anytime in the future I will do anything to hurt OriGen.  OriGen for me will always be a home, and I will always cheer for OriGen, and wish it all the best."  **Ex. 4** (2/1/26 email from D. Badawi to R. Torrado).  OriGen promptly reviewed the entirety of UniversalAGI's website and other available information about its business.  OriGen identified no information suggesting that company was pursuing business in the oil and gas or energy fields.

Around 9:00 a.m. on Monday, February 2, Dr. Torrado advised you that OriGen had revoked your access to Company computers and requested the immediate return of your laptop.  During an exit interview around 11:00 a.m., you reiterated that UniversalAGI was not working in oil and gas.  When asked to sign the Termination Certificate attached to your CIAA, you asserted that you had already done so.  Finding no record of a post-termination certificate, Dr. Castineira sent you a DocuSign that afternoon containing the termination certificate.  You opened and viewed the document but did not execute it.  **Ex. 5** (DocuSign activity reports).  When Dr. Castineira followed up that afternoon, you again asserted "I have signed the document" but, inexplicably, you did not return an executed copy to OriGen.  **Ex. 6** (Castineira email exchange with Badawi Feb. 2 & 3, 2026).  On Wednesday, February 4, Dr. Castineira followed up with you again regarding your termination certification.  To date, you still have failed or refused to provide OriGen with a fully executed certification.

On Friday, February 6, 2026, OriGen received a message from a job applicant for your former role at OriGen.  The message noted in passing that another company, UniversalAGI, was currently recruiting for an "almost identical role" related to a PINN-based AI surrogate for reservoir simulation.  When OriGen returned to UniversalAGI's website to investigate, the Company was surprised to find a new job posting for a role entitled "Founding Reservoir Engineer / Reservoir Geologist (Modeling & Simulation)," which plainly contemplates UniversalAGI's direct competition with OriGen in the reservoir simulation market.  *See* **Ex. 7**

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 4

(UniversalAGI job posting).

Upon receipt of this information directly contradicting your representations to OriGen about UniversalAGI, OriGen immediately undertook a review of your work laptop and discovered a OneDrive folder titled "Daniel – Personal" linked to your personal email that remained accessible to you. This folder contained a complete copy of OriGen's source code, including the most recent versions to which you had access, and the proprietary architectures contained therein, as well as hundreds of other files containing most of OriGen's proprietary and commercially sensitive information. **Ex. 8** (screenshot of synced folder). An initial forensic review that evening shows that you connected USB devices to the company laptop multiple times before your departure.

Your conduct stands in direct violation of your contractual obligations to OriGen. Your refusal to execute the Termination Certificate is a clear material breach of your obligation to do so set forth in the CIAA. In light of UniversalAGI's recent job posting declaring its intention to employ multiple AI researchers and engineers with PINN and FNO experience to build a PINN Surrogate for reservoir simulation, there can be no serious dispute as to its status as a competitor under even the narrowest interpretation of the CIAA's reasonable non-competition covenant. Your pursuit of employment with UniversalAGI therefore presents an additional an independent material breach of your employment agreement. Apart from your contractual obligations, your conduct is illegal under federal and state law prohibiting misappropriation of trade secrets and unfair competition, including the Defend Trade Secrets Act. You have not only failed to return Company property, but you have also actively misappropriated a copy of OriGen's source code, proprietary algorithms, and many other trade secrets critical to the market leading capabilities of OriGen's bespoke neural network architecture. It seems hardly to need explaining that all of this proprietary information would be of enormous value to a new market entrant like UniversalAGI that is seeking to develop PINN-surrogate based reservoir simulation platform.

The Company is actively investigating this matter, including any additional unauthorized actions you may have taken and intends to take all necessary measures to vigorously protect its trade secrets and interests. Any further unauthorized disclosure of the information you have misappropriated presents an immediate, existential risk to OriGen. The damage to OriGen that would result from any such disclosure cannot be overstated and could not be repaired. We are, therefore, preparing to initiate a civil action against you asserting claims for breach of contract, misappropriation of trade secrets, and other applicable claims, and seeking a temporary restraining order, a preliminary and permanent injunction, monetary damages, and any and all other remedies available at law.

Absent prompt compliance with the demands set forth below or concrete written assurances that compliance with these demands is immediately forthcoming 5:00 p.m. on February 9, 2026, OriGen will commence legal action and immediately move for a TRO and order to show cause for preliminary injunction enjoin you and/or UniversalAGI from any further disclosure or use of information, enjoining your employment by UniversalAGI during the

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 5

Restricted Period set forth in the CIAA, ordering expedited discovery, and granting all other and further relief avialable in law or equity.

We will take into consideration your cooperation with our investigation in determining the actions we pursue. To that end, we demand that you provide the following by email to jpowell@mmwr.com no later than 5:00 p.m. on February 9:

(1) A detailed written description identifying:

    a. All electronic devices in your possession, custody, or control (including personal laptops, USB drives, tablets, and smartphones) that contain or have ever contained OriGen source code, trade secrets, or confidential information.

    b. All cloud storage accounts (including the OneDrive account linked to your Gmail and any other services such as Dropbox, GitHub, or Google Drive) that contain or have ever contained OriGen's trade secrets or source code.

    c. Any OriGen information you have uploaded to or stored on any of your personal accounts (e.g., personal OneDrive or Google Drive accounts), personal devices, and any other non-OriGen account, device, storage media, or location.

    d. All unauthorized disclosures or uses of OriGen's confidential, proprietary or trade secret information , including: (a) the recipient(s) of such information and their contact information, (b) the date(s) of the use or disclosure; and (c) a description of the information involved.

    e. All contacts, communications, and interactions you have had or observed with any current or former OriGen clients, prospective clients, or business partners outside the scope of your authorized duties, including: (a) the identity of such clients or parties and their contact information; (b) the date(s) and nature of such communications; and (c) whether any OriGen confidential, proprietary, or trade secret information was disclosed, referenced, or used in the course of such communications.

(2) A fully executed (signed and dated) copy of the Termination Certificate required by your CIAA, which you received by Docusign on February 1, *see* Ex. 5, an additional copy of which is attached as **Exhibit 9**.

(3) A fully executed copy of the additional certification and affirmation attached to this letter as **Exhibit 10** confirming that:

    a. You will comply with the covenants not to compete with or to solicit OriGen employees or customers for one year following the termination of your employment on February 2, 2026 as defined in Section 8of the CIAA. In compliance with your

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 6

covenant not to compete in CIAA Section 8(b), you agree not to pursue or accept any direct or indirect employment or independent contractor or agent relationship with UniversalAGI during the Restricted Priod.

b.  You have ceased and desisted from accessing, using, disclosing, or relying upon any OriGen trade secrets or confidential information.  You must further cease any work for UniversalAGI that relies upon or benefits from the stolen OriGen technology.

c.  You will immediately provide OriGen a computer-useable copy of all such Confidential Information in your possession, custody, and control,

d.  After providing a computer usable copy to OriGen, you will permanently delete and expunge such Confidential Information from those personal accounts, devices, and systems under the supervision of a third party auditor designated by OriGen.

e.  If and to the extent OriGen in the reasonable exercise of its sole discretion determines the use of a third-party auditor to be necessary to verify whether the required copying and/or deletion has been completed, you will provide a third party auditor designated by OriGen with access to your personal accounts, devices, and system as reasonably requested to verify whether all OriGen Confidential Information has been returned and deleted.

f.  You agree compensate OriGen in an amount equal to its reasonable attorney' fees and costs incurred in its prosecution of this action.

***Notice of Obligation to Preserve Evidence.***  You are under a strict legal obligation to preserve all evidence relevant to this matter.  You must preserve all documents, data, logs, and communications (including emails, text messages, and messages on encrypted platforms like Signal or WhatsApp) related to your employment at OriGen, your resignation, and your employment with UniversalAGI.  Do not delete, scrub, or alter any files.  Any attempt to delete data or "clean" your devices prior to forensic imaging will be treated as spoliation of evidence, which will subject you to severe sanctions in the pending litigation.

It is our hope that you will fully cooperate with our investigation, thereby avoiding the need for the Company to pursue legal action against you. If you intend to comply with your obligations in good faith, we expect your prompt and complete response.  Failure to do so by the above deadline will be interpreted as evidence of breach or disregard for your duties, potentially accelerating our pursuit of legal action.

If we do not receive the materials requested above or concrete written assurances that these materials are immediately forthcoming **by 5:00 PM EST tomorrow, February 9, 2026,** we will commence a civil action and seeking immediate injunctive relief, expedited discovery, damages, and attorneys' fees.  Please be guided accordingly.

Montgomery McCracken Walker & Rhoads LLP

Daniel Badawi, Ph.D.
February 8, 2026
Page 7

Very truly yours,

John J. Powell

Cc:     Ameer Haj Ali, PhD (*by email w/ encl. to* hajali.ameer@gmail.com)

Enclosures

**ORIGEN.AI, INC.**

**CONFIDENTIAL INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT**

*Employee Name:* Daniel Badawi

*Effective Date:* January 29th, 2025

As a condition of my becoming employed (or my employment being continued) by Origen.AI, Inc., a Delaware corporation, or any of its current or future subsidiaries, affiliates, successors or assigns (collectively, the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, the receipt of Confidential Information (as defined below) while associated with the Company, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby agree to the following:

1.     **Relationship.**  This Confidential Information and Invention Assignment Agreement (this "Agreement") will apply to my employment relationship with the Company.  If that relationship ends and the Company, within one (1) year thereafter, either reemploys me or engages me as a consultant, I agree that this Agreement will also apply to such later employment or consulting relationship unless the Company and I otherwise agree in writing.  Any employment or consulting relationship between the parties hereto, whether commenced prior to, upon, or after the date of this Agreement, is referred to herein as the "Relationship."

2.     **Applicability to Past Activities.**  The Company and I acknowledge that I may have performed work, activities, services, or made efforts on behalf of or for the benefit of the Company, or related to the current or prospective business of the Company in anticipation of my involvement with the Company, that would have been within the scope of my duties under this agreement if performed during the term of this Agreement, for a period of time prior to the Effective Date of this Agreement (the "Prior Period").  Accordingly, if and to the extent that, during the Prior Period: (i) I received access to any information from or on behalf of the Company that would have been Confidential Information (as defined below) if I received access to such information during the term of this Agreement; or (ii) I (a) conceived, created, authored, invented, developed or reduced to practice any item (including any intellectual property rights with respect thereto) on behalf of or for the benefit of the Company, or related to the current or prospective business of the Company in anticipation of my involvement with the Company, that would have been an Invention (as defined below) if conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement; or (b) incorporated into any such item any pre-existing invention, improvement, development, concept, discovery or other proprietary information that would have been a Prior Invention (as defined below) if incorporated into such item during the term of this Agreement; then any such information shall be deemed "Confidential Information" hereunder and any such item shall be deemed an "Invention" or "Prior Invention" hereunder, and this Agreement shall apply to such activities, information or item as if disclosed, conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement.

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

3.    **Confidential Information.**

(a)    **Protection of Information.**  I understand that during the Relationship, the Company intends to provide me with certain information, including Confidential Information (as defined below), without which I would not be able to perform my duties to the Company.  At all times during the term of the Relationship and thereafter, I shall hold in strictest confidence, and not use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, and not disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any Confidential Information that I obtain, access or create during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.  I shall not make copies of such Confidential Information except as authorized by the Company or in the ordinary course of my obligations to the Company under the Relationship.

(b)    **Confidential Information.**  I understand that "Confidential Information" means any and all information and physical manifestations thereof not generally known or available outside the Company and information and physical manifestations thereof entrusted to the Company in confidence by third parties, whether or not such information is patentable, copyrightable or otherwise legally protectable.  Confidential Information includes, without limitation:  (i) Company Inventions (as defined below); and (ii) technical data, trade secrets, know-how, research, product or service ideas or plans, software codes and designs, algorithms, developments, inventions, patent applications, laboratory notebooks, processes, formulas, techniques, biological materials, mask works, engineering designs and drawings, hardware configuration information, agreements with third parties, lists of, or information relating to, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, suppliers and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), price lists, pricing methodologies, cost data, market share data, marketing plans, licenses, contract information, business plans, financial forecasts, historical financial data, budgets or other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation.

(c)    **Third Party Information.**  My agreements in this Section 3 are intended to be for the benefit of the Company and any third party that has entrusted information or physical material to the Company in confidence.  During the term of the Relationship and thereafter, I will not improperly use or disclose to the Company any confidential, proprietary or secret information of my former employer(s) or any other person, and I will not bring any such information onto the Company's property or place of business.

(d)    **Other Rights.**  This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

(e) **U.S. Defend Trade Secrets Act.** Notwithstanding the foregoing, the U.S. Defend Trade Secrets Act of 2016 ("DTSA") provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (iii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, DTSA provides that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

4.    **Ownership of Inventions.**

(a) **Inventions Retained and Licensed.** I have attached hereto, as Exhibit A, a complete list describing with particularity all Inventions (as defined below) that, as of the Effective Date: (i) have been created by or on behalf of me, and/or (ii) are owned exclusively by me or jointly by me with others or in which I have an interest, and that relate in any way to any of the Company's actual or proposed businesses, products, services, or research and development, and which are not assigned to the Company hereunder (collectively "Prior Inventions"); or, if no such list is attached, I represent and warrant that there are no such Inventions at the time of signing this Agreement, and to the extent such Inventions do exist and are not listed on Exhibit A, I hereby irrevocably and forever waive any and all rights or claims of ownership to such Inventions. I understand that my listing of any Inventions on Exhibit A does not constitute an acknowledgement by the Company of the existence or extent of such Inventions, nor of my ownership of such Inventions. I further understand that I must receive the formal approval of the Company before commencing my Relationship with the Company.

(b) **Use or Incorporation of Inventions.** If in the course of the Relationship, I use or incorporate into any of the Company's products, services, processes or machines any Invention not assigned to the Company pursuant to Section 4(d) of this Agreement in which I have an interest, I will promptly so inform the Company in writing. Whether or not I give such notice, I hereby irrevocably grant to the Company a nonexclusive, fully paid-up, royalty-free, assumable, perpetual, worldwide license, with right to transfer and to sublicense, to practice and exploit such Invention and to make, have made, copy, modify, make derivative works of, use, sell, import, and otherwise distribute such Invention under all applicable intellectual property laws without restriction of any kind.

(c) **Inventions.** I understand that "Inventions" means discoveries, developments, concepts, designs, ideas, know how, modifications, improvements, derivative works, inventions, trade secrets and/or original works of authorship, whether or not patentable, copyrightable or otherwise legally protectable. I understand this includes, but is not limited to, any new product, machine, article of manufacture, biological material, method, procedure, process, technique, use, equipment, device, apparatus, system, compound, formulation, composition of matter, design or configuration of any kind, or any improvement thereon. I understand that "Company Inventions" means any and all Inventions that I may solely or jointly

author, discover, develop, conceive, or reduce to practice during the period of the Relationship or otherwise in connection with the Relationship, except as otherwise provided in Section 4(g) below.

(d) **Assignment of Company Inventions.** I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all of my right, title and interest throughout the world in and to any and all Company Inventions and all patent, copyright, trademark, trade secret and other intellectual property rights and other proprietary rights therein. I hereby waive and irrevocably quitclaim to the Company or its designee any and all claims, of any nature whatsoever, that I now have or may hereafter have for infringement of any and all Company Inventions. I further acknowledge that all Company Inventions that are made by me (solely or jointly with others) within the scope of and during the period of the Relationship are "works made for hire" (to the greatest extent permitted by applicable law) and are compensated by my salary. Any assignment of Company Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "Moral Rights"). To the extent that Moral Rights cannot be assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law. If I have any rights to the Company Inventions, other than Moral Rights, that cannot be assigned to the Company, I hereby unconditionally and irrevocably grant to the Company during the term of such rights, an exclusive, irrevocable, perpetual, worldwide, fully paid and royalty-free license, with rights to sublicense through multiple levels of sublicensees, to reproduce, distribute, display, perform, prepare derivative works of and otherwise modify, make, have made, sell, offer to sell, import, practice methods, processes and procedures and otherwise use and exploit, such Company Inventions.

(e) **Maintenance of Records.** I shall keep and maintain adequate and current written records of all Company Inventions made or conceived by me (solely or jointly with others) during the term of the Relationship. The records may be in the form of notes, sketches, drawings, flow charts, electronic data or recordings, laboratory notebooks, or any other format. The records will be available to and remain the sole property of the Company at all times. I shall not remove such records from the Company's place of business or systems except as expressly permitted by Company policy which may, from time to time, be revised at the sole election of the Company for the purpose of furthering the Company's business. I shall deliver all such records (including any copies thereof) to the Company at the time of termination of the Relationship as provided for in Section 5 and Section 6.

(f) **Intellectual Property Rights.** I shall assist the Company, or its designee, at its expense, in every proper way in securing the Company's, or its designee's, rights in the Company Inventions and any copyrights, patents, trademarks, mask work rights, Moral Rights, or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company or its designee of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, recordations, and all other instruments which the Company or its designee shall deem necessary in order to apply for, obtain, maintain and transfer such rights, or if not transferable, waive and shall never assert such

-5-

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

rights, and in order to assign and convey to the Company or its designee, and any successors, assigns and nominees the sole and exclusive right, title and interest in and to such Company Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. My obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue during and at all times after the end of the Relationship and until the expiration of the last such intellectual property right to expire in any country of the world. I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead to execute and file any such instruments and papers and to do all other lawfully permitted acts to further the application for, prosecution, issuance, maintenance or transfer of letters patent, copyright, mask work and other registrations related to such Company Inventions. This power of attorney is coupled with an interest and shall not be affected by my subsequent incapacity.

(g)    **Exception to Assignments.** Subject to the requirements of applicable state law, if any, I understand that the Company Inventions will not include, and the provisions of this Agreement requiring assignment of inventions to the Company do not apply to, any invention which qualifies fully for exclusion under the provisions of applicable state law, if any. In order to assist in the determination of which inventions qualify for such exclusion, I will advise the Company promptly in writing, during and for a period of twelve (12) months immediately following the termination of the Relationship, of all Inventions solely or jointly conceived or developed or reduced to practice by me during the period of the Relationship.

5.    **Company Property; Returning Company Documents.** I acknowledge that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, files, e-mail messages, and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice. I further acknowledge that any property situated on the Company's premises or systems and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. At the time of termination of the Relationship, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to the Relationship or otherwise belonging to the Company, its successors or assigns.

6.    **Termination Certification.** In the event of the termination of the Relationship, I shall sign and deliver the "Termination Certification" attached hereto as Exhibit B; however, my failure to sign and deliver the Termination Certification shall in no way diminish my continuing obligations under this Agreement.

7.    **Notice to Third Parties.** During the periods of time during which I am restricted in taking certain actions by the terms of Section 8 of this Agreement (the "Restriction Period"), I shall inform any entity or person with whom I may seek to enter into a business relationship (whether as an owner, employee, independent contractor or otherwise) of my contractual obligations under this Agreement. I acknowledge that the Company may, with or without prior

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

notice to me and whether during or after the term of the Relationship, notify third parties of my agreements and obligations under this Agreement. Upon written request by the Company, I will respond to the Company in writing regarding the status of my employment or proposed employment with any party during the Restriction Period.

8.    **Solicitation of Employees, Consultants and Other Parties; Non-Compete.**  As described above, I acknowledge that the Company's Confidential Information includes information relating to the Company's employees, consultants, customers and others, and I will not use or disclose such Confidential Information except as authorized by the Company in advance in writing.  I further agree as follows:

(a)    **Employees, Consultants.** During the term of the Relationship, and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, I shall not, directly or indirectly, solicit any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit employees or consultants of the Company, either for myself or for any other person or entity.

(b)    **Other Parties.**  During the term of the Relationship, I will not influence any of the Company's clients, licensors, licensees or customers from purchasing Company products or services or solicit or influence or attempt to influence any client, licensor, licensee, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company.

(c)    **Non-Compete.**  During the term of the Relationship, and for a period of twelve (12) months immediately following the termination of the relationship for any reason, whether with or without cause, I shall not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise engage, invest or participate in any business that is similar to those which the Company has created, has under development or are the subject of active planning from time to time during my employment with the Company, provided, however, that I may own, as a passive investor, publicly-traded securities of any corporation that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.

9.    **At-Will Relationship.**  I understand and acknowledge that, except as may be otherwise explicitly provided in a separate written agreement between the Company and me, my Relationship with the Company is and shall continue to be at-will, as defined under applicable law, meaning that either I or the Company may terminate the Relationship at any time for any reason or no reason, without further obligation or liability, other than those provisions of this Agreement that explicitly continue in effect after the termination of the Relationship.

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

10.    **Representations and Covenants**.

(a)    **Facilitation of Agreement**.  I shall execute promptly, both during and after the end of the Relationship, any proper oath, and to verify any proper document, required to carry out the terms of this Agreement, upon the Company's written request to do so.

(b)    **No Conflicts**.  I represent and warrant that my performance of all the terms of this Agreement does not and will not breach any agreement I have entered into or will enter into, with any third party, including without limitation any agreement to keep in confidence proprietary information or materials acquired by me in confidence or in trust prior to or during the Relationship.  I will not disclose to the Company or use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer, or any other party.  I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer, or any other party.  I represent and warrant that I have listed on Exhibit A all agreements (*e.g.,* non-competition agreements, non-solicitation of customers agreements, non-solicitation of employees agreements, confidentiality agreements, inventions agreements, etc.), if any, with a current or former client, employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties for the Company or any obligation I may have to the Company.  I shall not enter into any written or oral agreement that conflicts with the provisions of this Agreement.

(c)    **Voluntary Execution**.  I certify and acknowledge that I have carefully read all of the provisions of this Agreement, that I understand and have voluntarily accepted such provisions, and that I will fully and faithfully comply with such provisions.

11.    **Electronic Delivery**.  Nothing herein is intended to imply a right to participate in any of the Company's equity incentive plans, however, if I do participate in such plan(s), the Company may, in its sole discretion, decide to deliver any documents related to my participation in the Company's equity incentive plan(s) by electronic means or to request my consent to participate in such plan(s) by electronic means.  I hereby consent to receive such documents by electronic delivery and agree, if applicable, to participate in such plan(s) through an online or electronic system established and maintained by the Company or a third party designated by the Company.

12.    **Miscellaneous**.

(a)    **Governing Law**.  The validity, interpretation, construction, and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed, and interpreted in accordance with the laws of the state of New York, without giving effect to principles of conflicts of law.

(b)    **Entire Agreement**.  This Agreement sets forth the entire agreement and understanding between the Company and me relating to its subject matter and merges all prior discussions between us.  No amendment to this Agreement will be effective unless in writing signed by both parties to this Agreement.  The Company shall not be deemed hereby to have

-8-

waived any rights or remedies it may have in law or equity, nor to have given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of the Company, it being understood that, even if I am an officer of the Company, I will not have authority to give any such authorizations or waivers for the Company under this Agreement without specific approval by the Board of Directors.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

(c)     **Successors and Assigns.**  This Agreement will be binding upon my heirs, executors, administrators, and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

(d)     **Notices.**  Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

(e)     **Severability.**  If one or more of the provisions in this Agreement are deemed void or unenforceable to any extent in any context, such provisions shall nevertheless be enforced to the fullest extent allowed by law in that and other contexts, and the validity and force of the remainder of this Agreement shall not be affected.  The Company and I have attempted to limit my right to use, maintain and disclose the Company's Confidential Information, and to limit my right to solicit employees and customers only to the extent necessary to protect the Company from unfair competition.  Should a court of competent jurisdiction determine that the scope of the covenants contained in Section 8 exceeds the maximum restrictiveness such court deems reasonable and enforceable, the parties intend that the court should reform, modify and enforce the provision to such narrower scope as it determines to be reasonable and enforceable under the circumstances existing at that time.

(f)     **Remedies.**  I acknowledge that violation of this Agreement by me may cause the Company irreparable harm, and therefore I agree that the Company will be entitled to seek extraordinary relief in court, including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security (or, where such a bond or security is required, that a $1,000 bond will be adequate), in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

(g)     **Advice of Counsel.**  I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

        (h)     **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.  Execution of a facsimile or scanned copy will have the same force and effect as execution of an original, and a facsimile or scanned signature will be deemed an original and valid signature.

*[Signature Page Follows]*

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

The parties have executed this Confidential Information and Invention Assignment Agreement on the respective dates set forth below, to be effective as of the Effective Date first above written.

**THE COMPANY:**

ORIGEN.AI, INC.

By:  _____
                    (Signature)

Name: Rubén Rodríguez Torrado

Title: CEO

Address: 370 Jay Street 7th Floor
Brooklyn   NY, 11201
United States

Date:  _____
            01 / 30 / 2025

**EMPLOYEE:**

  Daniel Badawi
_____
(PRINT NAME)

(Signature)

Address:
  950 Colgate Dr
  College Station, TX 77840
Email: daniel.db1988@gmail.com

Date:  _____
            01 / 30 / 2025

# System Access Control Policy

## OriGen.AI

## Background

Access to Origen.AI systems and applications is limited for all users, including but not limited to workforce members, volunteers, business associates, contracted providers, and consultants. Access by any other entity is allowable only on a minimum necessary basis. All users are responsible for reporting an incident of unauthorized use or access of the organization's information systems.

## Purpose

The purpose of this procedure is to provide a policy and guideline for creating, modifying, or removing access to the company's network and data by creating, changing or deleting the network account configuration for a User.

## Scope

This policy and defined process is used to allow access to the company's data and systems to individuals who meet the requirements defined in this policy. This policy governs individuals who are granted access that is necessary to support the business. This policy relates to all data used, processed, stored, maintained, or transmitted in and through the company's systems.

## Policy

### Access Establishment and Modification - Role-Based

Requests for access to Origen.AI Platform systems and applications are made formally using the following process:

- An Origen.AI workforce member initiates the access request by creating an Issue in the Origen.AI ticketing system.
  - User identities must be verified prior to granting access to new accounts.
  - Identity verification must be done in person where possible; for remote employees, identities must be verified over the phone.
  - For new accounts, the method used to verify the user's identity must be recorded on the Issue.

- The Security Lead will grant or reject access to systems as dictated by the employee's role and job title.
  - If additional access is required outside of the minimum necessary to perform job functions, the requester must include a description of why the additional access is required as part of the access request.
  - If the request is rejected, it goes back for further review and documentation.
  - If the review is approved, the request is marked as "Done", and any pertinent notes are added.

### Access Reviews

All access to Origen.AI systems and services is reviewed and updated on an annual basis to ensure proper authorizations are in place commensurate with job functions. The process for conducting reviews is outlined below:

1. The Security Lead initiates the review of user access by creating an Issue in the Origen.AI Ticketing System

2. The Security Lead is assigned to review levels of access for each Origen.AI workforce member.
3. If user access is found during review that is not in line with the least privilege principle, the Security Lead may modify user access and notify the user of access changes.
4. Once the review is complete, the Security Lead then marks the ticket as "Done", adding any pertinent notes required.

## Workforce Clearance

- The level of security assigned to a user to the organization's information systems is based on the minimum necessary amount of data access required to carry out legitimate job responsibilities assigned to a user's job classification.
- All access is regulated by the role-based access control (RBAC) method, based on the *Principle of Least Privilege*.
- Origen.AI maintains a least privileged approach for access to customer data.

## Role Definitions and Access Permissions

To ensure efficient and secure access to Origen.AI systems, the following roles have been established, each with specific responsibilities and access permissions:

- Owner: Has full access to all resources within the Azure subscription, capable of managing resources, role assignments, and policies. This role is typically reserved for high-level management with strategic oversight.
- Contributor: Can create and manage Azure resources but cannot manage role assignments. Suitable for developers, system engineers, and operational staff involved in the day-to-day management of Azure resources.
- Reader: Possesses read-only access to view all resources without the ability to make changes. Ideal for roles requiring oversight without operational control, such as auditors or compliance officers.
- User Access Administrator: Manages user access and role assignments within Azure, ensuring that users have appropriate access based on their job functions.
- DevOps Engineer: A custom role that blends the permissions of Contributor and User Access Administrator to fit the unique needs of DevOps practices within Origen.AI.
- Security Manager: Focuses on the configuration and management of security policies, network security groups, and other security-related Azure resources.
- Network Engineer: Responsible for managing and configuring Azure's virtual network settings, including gateways, subnets, and security rules.
- Data Scientist/Data Engineer(Research): Handles data-related services such as Azure SQL Database, Azure Data Lake, and Azure Synapse Analytics, with access tailored to the management of these resources.

These roles are designed to align with the Principle of Least Privilege, ensuring that individuals have only the access necessary to perform their job functions. Roles and permissions are subject to periodic review and adjustment to adapt to changing needs and to ensure continued alignment with Origen.AI's security policies and business objectives.

## Unique User Identification

- Access to the Origen.AI Platform systems and applications is controlled by requiring unique User Login IDs and passwords for each individual user and developer.
- Passwords requirements mandate strong password controls.
- Passwords are not displayed at any time and are not transmitted or stored in plain text.
- Default accounts on all production systems, including root, are disabled.
- Shared accounts are not allowed within Origen.AI Production systems or networks.
- Automated log-on configurations other than the company's approved Password Management provider that store user passwords or bypass password entry are not permitted for use with Origen.AI workstations or production systems.

## Automatic Logoff

Users are required to make information systems inaccessible by any other individual when unattended by the users (ex. by using a password protected screen saver or logging off the system).

## Employee Workstation Use

All workstations at Origen.AI are company owned, and all are laptop products running Windows, Mac OSX or Linux.

- Workstations may not be used to engage in any activity that is illegal or is in violation of company policies.
- Access may not be used for transmitting, retrieving, or storage of any communications of a discriminatory or harassing nature or materials that are obscene or "X-rated". Harassment of any kind is prohibited. No messages with derogatory or inflammatory remarks about an individual's race, age, disability, religion, national origin, physical attributes, sexual preference, or health condition shall be transmitted or maintained. No abusive, hostile, profane, or offensive language is to be transmitted through the organization's system.
- Information systems/applications also may not be used for any other purpose that is illegal, unethical, or against company policies or contrary to the company's best interests. Messages containing information related to a lawsuit or investigation may not be sent without prior approval.
- Solicitation of non-company business, or any use of the company's information systems/applications for personal gain is prohibited.
- Users may not misrepresent, obscure, suppress, or replace another user's identity in transmitted or stored messages.
- Workstation hard drives must be encrypted
- All workstations have firewalls enabled to prevent unauthorized access unless explicitly granted.

## Employee Termination/Offboarding Procedures

- The Human Resources Department (or other designated department), users, and their supervisors are required to notify the Security Lead upon completion and/or termination of access needs and facilitate completion of the "Offboarding Checklist".
- The Human Resources Department, users, and supervisors are required to notify the Security Lead to terminate a user's access rights if there is evidence or reason to believe the following (these incidents are also reported on an incident report and is filed with the Privacy Lead):
  - The user has been using their access rights inappropriately;
  - A user's password has been compromised (a new password may be provided to the user if the user is not identified as the individual compromising the original password);

- It is expected that the Security Lead terminate users' access rights within **1 business day** of termination/ separation, and will coordinate with the appropriate Origen.AI employees to terminate access to any non-production systems managed by those employees.
- The Security Lead audits and may terminate access of users that have not logged into the organization's information systems/applications for an extended period of time.

## Revision History

| Version | Date | Editor | Approver | Description of Changes | Format |
|---------|------|--------|----------|------------------------|--------|
|         |      |        |          |                        |        |

Personnel    Exclusions

## Personnel Policy Status                                                    ×

Powell Dec. Ex. A at Ex. 3

Daniel Badawi

Former employee

- ✓ Acceptable Use Policy
- ✓ Backup Policy
- ✓ Code of Conduct
- ✓ Data Classification Policy
- ✓ Data Protection Policy
- ✓ Data Retention Policy
- ✓ Disaster Recovery Plan
- ✓ Encryption Policy
- ✓ Incident Response Plan
- ✓ Information Security Policy
- ✓ Logging and Monitoring Policy
- ✓ Password Policy
- ✓ Physical Security Policy
- ✓ Risk Assessment Policy
- ✓ System Access Control Policy
- ✓ Vulnerability Management Policy

Close

David Maczka
david.maczka@ori...

## Daniel Badawi
daniel@origen.ai

Former employee ⌄

### Hire Date – Separation Date
Feb 6, 2025 – Feb 3, 2026

### Acknowledged Policies
✓ Last checked 5 months ago

### Primary Identity Provider
⊗ Not Connected

### Primary HRIS Provider
⚠ Not Connected

### Multi-Factor Authentication (MFA) on IdP
✓ Last checked 7 hours ago

### Last Background Check Report Completion Date
✓ Last checked 9 months ago

**Manual report** | Completed on Feb 3, 2025

### Last Security Training Completion Date

**Powell, John**

| | |
|---|---|
| **From:** | Daniel Badawi <danielbadawi8@gmail.com> |
| **Sent:** | Sunday, February 1, 2026 10:58 PM |
| **To:** | Ruben Rodriguez Torrado |
| **Cc:** | Daniel Badawi; Powell, John |
| **Subject:** | Re: Request Pursuant to Section 7 of CIAA |

**\*\*CAUTION\*\*** External Email

Hello Ruben,

Thank you for your explanatory email.

I understand my obligations toward OriGenAI which I greatly love and forever appreciate.

1. I am moving to a company called UniversalAGI located in Silicon Valley in California. This is their website: www.universalagi.com. The company is involved in hydrodynamics and aerodynamics (CFD).

2. The company is aware of the CIAA that I have with OriGenAI.

To sum up, the company I am going to is in a different market, and therefore I don't think my move there would in any way violate my CIAA agreement with OriGen.

Ruben, as I said many times, not now not in anytime in the future I will do anything to hurt OriGen. OriGen for me will always be a home, and I will always cheer for OriGen, and wish it all the best.

Please let me know the next steps.

All the best,

Daniel

On Sun, Feb 1, 2026 at 21:30 Ruben Rodriguez Torrado <rubentorrado@origen.ai> wrote:

> Hello Daniel,
>
> I write pursuant to Section 7 of your Confidential Information and Invention Assignment Agreement ("CIAA") with Origen.AI, Inc. ("Company") executed January 30, 2025, to request that you respond in writing regarding the status of your proposed employment by a third party during the Restriction Period.

1

Please note that it is Company protocol, in situations such as this, to activate and enforce the procedures set forth in Section 7 of the CIAA.

On or before February 2nd at 9:00 a.m., please comply with your obligations under the CIAA by providing a response to this request in writing (email is fine):

(1) identifying the third party with whom you propose to be employed during the Restriction Period, and

(2) confirming that you have informed the proposed employer of all of your obligations under the CIAA.

The Company has no interest in interfering with your prospective employment, but requires this response to protect and facilitate the enforcement of its rights under the CIAA and to determine next steps.

Thank you,



**Ruben Rodriguez Torrado, PhD**
Founder and CEO
**OriGen.AI**
"Real Time Simulation and Optimization"

(917) 679-4703
rubentorrado@origen.ai
https://www.origen.ai/

# Envelope History

**Powell Decl. Ex. A at Ex. 5**

| Time | User | Action | Activity | Status |
|---|---|---|---|---|
| 2/2/2026 02:26:36 pm | David Castineira Areas api: 2601:2c6:4a80:a410:5897:6fbe:5ab1:baab | Registered | The envelope was created by David Castineira Areas | Created |
| 2/2/2026 02:29:09 pm | David Castineira Areas api: 2601:2c6:4a80:a410:5897:6fbe:5ab1:baab | Auto Tagging | David Castineira Areas used auto tagging to add fields | Created |
| 2/2/2026 02:29:57 pm | David Castineira Areas api: 2601:2c6:4a80:a410:5897:6fbe:5ab1:baab | Sent Invitations | David Castineira Areas sent an invitation to Daniel Badawi [danielbadawi8@gmail.com] | Sent |
| 2/3/2026 08:59:16 am | Daniel Badawi web: 2600:4041:44c1:6a00:f83d:f3ad:c6d:8b42 | Opened | Daniel Badawi opened the envelope [documents:(termination certification.pdf)] | Sent |
| 2/3/2026 08:59:24 am | Daniel Badawi web: 2600:4041:44c1:6a00:f83d:f3ad:c6d:8b42 | Viewed | Daniel Badawi viewed the envelope [documents:(termination certification.pdf)] | Delivered |
| 2/3/2026 10:15:21 am | Daniel Badawi web: 2600:4041:44c1:6a00:f83d:f3ad:c6d:8b42 | Opened | Daniel Badawi opened the envelope [documents:(termination certification.pdf)] | Delivered |
| 2/3/2026 10:15:23 am | Daniel Badawi web: 2600:4041:44c1:6a00:f83d:f3ad:c6d:8b42 | Viewed | Daniel Badawi viewed the envelope [documents:(termination certification.pdf)] | Delivered |
| 2/3/2026 10:32:25 am | Daniel Badawi web: 2600:4041:44c1:6a00:f83d:f3ad:c6d:8b42 | Printable Copy Delivered | Daniel Badawi received a printable copy of the envelope | Delivered |
| 2/7/2026 07:27:42 am | David Castineira Areas web: 172.58.48.0 | Opened | David Castineira Areas opened the envelope [documents:(termination certification.pdf)] | Delivered |
| 2/7/2026 07:27:44 am | David Castineira Areas web: 172.58.48.0 | Viewed | David Castineira Areas viewed the envelope [documents:(termination certification.pdf)] | Delivered |
| 2/7/2026 05:02:50 pm | David Castineira Areas api: 2607:fb90:9227:c5a0:1c8b:e33:603e:a880 | Printable Copy Delivered | David Castineira Areas received a printable copy of the envelope | Delivered |

Print    Download Certificate



**Docusign**

Home    **Agreements**    Templates    Reports    Documents    Admin

Upgrade

## Get started — 2/5 actions completed    What's next?    Create a Signature

**Start Now**

ENVELOPES

- Inbox
- Sent
- Completed
- Action Required

Show More

Maestro Workflows    NEW
Navigator    NEW
PowerForms

New navigation

## Waiting for Others

Shared Access

Search Quick Views    Date: Last 30 days    Sender    Advanced search    Clear

| NAME | STATUS | LAST CHANGE | FOLDER |
|------|--------|-------------|--------|
| Complete with Docusign: termination certification.pdf<br>To: Daniel Badawi | Waiting for Daniel Badawi | 2/3/2026<br>08:59:24 am | Sent    Resend |

English (US)    Contact Us    Terms of Use    Privacy    Intellectual Property    Trust    Copyright © 2026 Docusign, Inc. All rights reserved

**Powell Decl. Ex. A at Ex. 6**

**From:** Daniel Badawi <danielbadawi8@gmail.com>
**Sent:** Tuesday, February 3, 2026 10:15 AM
**To:** david.castineira@origen.ai
**Cc:** Ruben Rodriguez Torrado <rubentorrado@origen.ai>
**Subject:** Re: Form BC-10 and Termination Certification

Hello David,

I have signed the document, and I am attaching the i-983 document which needs to be signed by OriGen. I am attaching the document to this email. On page 5, below my signature, you or Ruben can sign so I can submit this to the DSO at TAMU.

Regarding the payments, I believe there are 4 retro-payments that have not been paid to me yet, this is when my offer was upgraded in August 2025. Also, the second part of my annual bonus is still pending. Up to August 2025 my annual bonus was $3,500, and after that it was upgraded to $10,000. The only bonus amount I received is $2,845.21.

Please let me know if anything else is needed from my end,

All the best,
Daniel

On Mon, Feb 2, 2026 at 3:31 PM <david.castineira@origen.ai> wrote:

Dear Daniel,

I hope this email finds you well. I am writing to provide you with some required information related to your separation from OriGen.AI:

- Your final paycheck will be issued by the next regularly scheduled payday.

- Unemployment insurance notice (Form BC-10, "Instructions for Claiming Unemployment Benefits") must be provided to all separating employees. You can access the form here, but it's also attached to this email (see file BC10.pdf). You will need a registration number, which is 462-283-648/000.

- Finally you should have received by email the Termination Certification for your signature via DocuSign. Please review the document and, if everything looks correct, complete the signing process at your earliest convenience. Once signed, a copy will automatically be sent to you for your records.

Thank you, and I wish you all the best in your future endeavors.

**David Castiñeira Areas, PhD**

COO and Chief Engineer at OriGen.AI

Phone: (+1) 512- 417-2569

Email: David.Castineira@origen.ai;

LinkedIn: https://www.linkedin.com/in/davidcastineira

*OriGen.AI - "Real Time Simulation and Optimization" (https://www.origen.ai/)*

2

# Founding Reservoir Engineer / Reservoir Geologist (Modeling & Simulation)

Location
San Francisco

Employment Type
Full time

Location Type
On-site

Department
Technical Staff ›

CFD & Physical Systems Engineering

Overview Application

📍 San Francisco | Work Directly with CEO & founding team | Report to CEO | OpenAI for Physics | 🏢 5 Days Onsite

Founding Reservoir Engineer / Reservoir Geologist (Modeling & Simulation)

Location: Onsite in San Francisco

Compensation: Competitive Salary + Equity

## Who We Are

UniversalAGI is building OpenAI for Physics. AI startup based in San Francisco and backed by Elad Gil (#1 Solo VC), Eric Schmidt (former Google CEO), Prith Banerjee (ANSYS CTO), Ion Stoica (Databricks Founder), Jared Kushner (former Senior Advisor to the President), David Patterson (Turing Award Winner), and Luis Videgaray (former Foreign and Finance Minister of Mexico). We're building foundation AI models for

physics that enable end-to-end industrial automation from initial design through optimization, validation, and production.

We're building a high-velocity team of relentless researchers and engineers that will define the next generation of AI for industrial engineering. If you're passionate about AI, physics, or the future of industrial innovation, we want to hear from you.

## About the Role

As a founding Reservoir Engineer / Geologist, you'll be in the arena from day one, building the future of AI for physics simulation with your own hands. This is your chance to take everything you've learned in reservoir geology and use it to build foundation AI models that will transform how the entire industry works.

You'll work directly with the CEO and founding team to shape our product around the real pain points you've faced in your career: the tedious data preparation, the manual grid and upscaling loops, and endless history-matching.

## What You'll Do

- Design, preprocess, grid, simulate, and post-process reservoir models (geological and flow) at unprecedented scale and speed, using industry-standard simulators and real subsurface data.

- Develop systematic workflows to generate hundreds or thousands of reservoir scenarios, including geological realizations, well configurations, and operating conditions—building the data pipelines that will train our foundation models.

- Guide the development of our product and our AI models for physical systems by working directly on research problems with our AI team, bridging the gap between traditional reservoir simulation and modern machine learning.

- Work directly with clients to define benchmark datasets, validation criteria, and end-to-end workflows that demonstrate our models can match or exceed conventional reservoir simulation accuracy and decision value.

- Generate high-quality simulation data at scale, every simulation you run directly improves our foundation models.

- Advise the AI research team on the nuances that matter in subsurface modeling: model fidelity, black-oil vs compositional vs thermal models, gridding and upscaling tradeoffs, relative permeability, well controls, and numerical stability.

- Lead technical conversations with customers and internal teams, translating between the language of reservoir engineering / geology and the world of AI and foundation models.

- This role is for someone ready to push beyond the limits of traditional reservoir simulation, tackle deep uncertainty and scale challenges, and help define the next generation of subsurface engineering and decision-making.

**Qualifications**

- M.S. or Ph.D. in Reservoir Engineering, Petroleum Engineering, Geology/Geoscience, or closely related field (required).

- 3+ years of hands-on industry experience doing reservoir modeling and reservoir simulation end-to-end, ideally in an operator, service company, or subsurface consultancy setting.

- Expert in reservoir simulator frameworks (e.g., SLB ECLIPSE / INTERSECT, CMG (IMEX/GEM/STARS), tNavigator, Nexus, or similar) and comfortable working directly with simulation decks / control files.

- Deep understanding of subsurface flow and numerical simulation: multiphase Darcy flow, PVT, relative permeability & capillary pressure, well modeling/controls, initialization, boundary conditions, convergence/stability, and common failure modes.

- Experience with model building and conditioning: gridding, upscaling, faults/barriers, contacts, rock/fluid property population, and rigorous QC to ensure simulation-ready inputs.
  Ability to design and execute systematic scenario studies (sensitivities, uncertainty ensembles, development plan variants) and produce clean, explainable outputs that can serve as ground truth for ML.

- Ability to design and execute systematic scenario studies (sensitivities,

←            **<O> UniversalAGI**

data-quality mindset.

- Exceptional creativity, problem-solving ability, ambition, and attention to detail.

- Comfortable working in high-intensity, fast-paced startup environments with evolving priorities and tight deadlines.

## Bonus Qualifications

- Prior experience integrating AI/ML (or proxy/surrogate models) into subsurface workflows, or partnering with ML teams to define training targets and validation.

- Experience at high-growth AI / deep-tech startups (Seed to Series C) or in a forward-deployed / client-facing technical role.

## Cultural Fit

- Technical Respect: Ability to earn respect through hands-on technical contribution

- Intensity: Thrives in our unusually intense culture - willing to grind when needed

- Customer Obsession: Passionate about solving real customer problems, not just cool tech

- Deep Work: Values long, uninterrupted periods of focused work over meetings

- High Availability: Ready to be deeply involved whenever critical issues arise

- Communication: Can translate complex technical concepts to customers and team

- Growth Mindset: Embraces the compounding returns of intelligence and continuous learning

- Startup Mindset: Comfortable with ambiguity, rapid change, and wearing multiple hats

- Work Ethic: Willing to put in the extra hours when needed to hit critical milestones

- Team Player: Collaborative approach with low ego and high accountability

## What We Offer

- Opportunity to shape the technical foundation of a rapidly growing foundational AI company.

- Work on cutting-edge industrial AI problems with immediate real-world impact.

- Direct collaboration with the founder & CEO and ability to influence company strategy

- Competitive compensation with significant equity upside.

- In-person first culture - 5 days a week in office with a team that values face-to-face collaboration.

• Access to world-class investors and advisors in the AI space.

## Benefits

We provide great benefits, including:

• Competitive compensation and equity.

• Competitive health, dental, vision benefits paid by the company.

• 401(k) plan offering.

• Flexible vacation.

• Team Building & Fun Activities.

• Great scope, ownership and impact.

• AI tools stipend.

• Monthly commute stipend.

• Monthly wellness / fitness stipend.

• Daily office lunch & dinner covered by the company.

• Immigration support.

## How We're Different

"The credit belongs to the man who is actually in the arena, whose face is marred by dust and sweat and blood; who strives valiantly; who errs, who comes short again and again... who at the best knows in the end the triumph of high achievement, and who at the worst, if he fails, at least fails while daring greatly." - Teddy Roosevelt

At our core, we believe in being "in the arena." We are builders, problem solvers, and risk-takers who show up every day ready to put in the work: to sweat, to struggle, and to push past our limits. We know that real progress comes with missteps, iteration, and resilience. We embrace that journey fully knowing that daring greatly is the only way to create something truly meaningful.

**If you're ready to join the future of physics simulation, push creative boundaries, and deliver impact, UniversalAGI is the place for you.**

**Apply for this Job**

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

Powered by **Ashby**

Privacy Policy   Security   Vulnerability Disclosure

## EXHIBIT B

## TERMINATION CERTIFICATION


This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, flow charts, materials, equipment, other documents or property, or copies or reproductions of any aforementioned items belonging to Origen.AI, Inc., a Delaware corporation, its subsidiaries, affiliates, successors or assigns (collectively, the "Company").

I further certify that I have complied with all the terms of the Company's Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreement")signed by me, including the reporting of any Inventions (as defined therein), conceived or made by me (solely or jointly with others) covered by the Confidentiality Agreement, and I acknowledge my continuing obligations under the Confidentiality Agreement.

I further agree that, in compliance with the Confidentiality Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months immediately following the termination of my Relationship with the Company, I shall not either directly or indirectly solicit any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit employees or consultants of the Company, either for myself or for any other person or entity.

Additionally, I understand and agree that I have 24 hours following the termination of my relationship with the Company to return all assets in my possession, including but not limited to devices, equipment, documents, and any other Company property, in good working condition, considering normal wear and tear. Failure to return all such assets within this time frame may result in further action.

I further acknowledge and agree that at the moment of the termination of my relationship with the Company, I am forbidden from using any of the Company's access credentials, logins, or other means to access OriGen.AI's systems, platforms, or any other Company property, including but not limited to obtaining or downloading confidential data and client information. I further agree to immediately return all Company property, data, and information in my possession or control upon termination.

Further, I agree that I shall not use any Confidential Information of the Company to influence any of the Company's clients or customers from purchasing Company products or services or to solicit or influence or attempt to influence any client, customer or other person

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

Date:_____          **EMPLOYEE:**

                                            _____
                                            (Print Employee's Name)

                                            _____
                                            (Signature)

Doc ID: 397e183f2146fbde2f651124e21b874196df175e

**Powell Decl. Ex. A Ex. 10**

**EXHIBIT 10**

**CERTIFICATION AND COMPLIANCE AFFIRMATION**

I, **Daniel Badawi, Ph.D.**, pursuant to my obligations under the Confidential Information and Invention Assignment Agreement dated January 30, 2025 (the "CIAA") with **OriGen.AI, Inc.** ("OriGen"), hereby certify and affirm under penalty of perjury as follows:

1. **Compliance with Restrictive Covenants:** I hereby agree to comply with the covenants not to compete with OriGen or to solicit OriGen employees or customers for a period of one year following the termination of my employment on February 2, 2026, as defined in Section 8 of the CIAA. In accordance with Section 8(b), I specifically agree that I will not pursue or accept any direct or indirect employment, independent contractor, or agent relationship with **UniversalAGI** during the Restricted Period.

2. **Cessation of Use:** I have ceased and desisted from accessing, using, disclosing, or relying upon any OriGen trade secrets or confidential information. I further affirm that I have ceased any work for UniversalAGI that relies upon or benefits from any OriGen technology or proprietary information.

3. **Delivery of Information:** I will immediately provide to OriGen a computer-usable copy of any and all OriGen Confidential Information and Trade Secrets currently in my possession, custody, or control, including but not limited to information stored on personal devices or cloud accounts.

4. **Forensic Remediation and Deletion:** After providing the required computer-usable copy to OriGen, I agree to permanently delete and expunge all such Confidential Information from my personal accounts, devices, and systems. I further agree that such deletion shall be conducted under the supervision of a third-party auditor designated by OriGen.

5. **Audit Access:** If and to the extent OriGen, in the reasonable exercise of its sole discretion, determines the use of a third-party auditor is necessary to verify compliance, I agree to provide said auditor with access to my personal accounts, devices, and systems as reasonably requested to verify that all OriGen Confidential Information has been returned and deleted.

6. **Compensation for Fees and Costs:** I hereby agree that I shall compensate OriGen.AI in an amount equal to its reasonable attorneys' fees and costs incurred in its prosecution of this matter and the enforcement of my contractual obligations.

I understand that this Certification is being provided to OriGen and its legal counsel to resolve my outstanding breaches of the CIAA. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: _____, 2026

_____

Daniel Badawi, Ph.D.

## Powell, John

| | |
|---|---|
| **From:** | Daniel Badawi <danielbadawi8@gmail.com> |
| **Sent:** | Monday, February 9, 2026 2:36 PM |
| **To:** | Powell, John |
| **Subject:** | Re: Breach of Obligations to OriGen.AI, Inc. |



Hello,

I am in receipt of your letter dated February 8, 2026.

Per your requests, I can confirm that I have an iPhone, a USB drive, and a personal OneDrive (that I knew about from your last email) which were previously connected to my OriGen's work laptop.

1. The Phone was only used to access my OriGen email, slack, and authentication apps.
2. The USB was connected on Sunday 02/01/2026. I connected it to upload some personal PDFs related to my university and taxes. OriGen laptop blocked (or did not read) the USB, so I unplugged and replugged it again (two or three times) with no success. On the following day, Monday 02/02/2026, I asked Ruben and Alberto if they would allow me to upload these PDFs to my google drive, they agreed, and I did it in front of them.

3. Regarding my personal OneDrive that is connected to the work laptop. I was never aware of this until I saw your email. I never intentionally used OneDrive at work nor I intentionally connected my personal account to the laptop. There is a good chance that at the beginning of my employment Microsoft automatically connected this to my personal OneDrive. Regardless, I confirm that I was never aware of this, nor have I ever used the OneDrive to access, copy, edit, or move any files. If you give me permission I can check if I still have access.

I confirm that I do not have access to any OriGen confidential information through my Phone, USB. I still need your permission to check the personal OneDrive since I was fully unaware of this.
I confirm that I have not uploaded and do not currently have in my possession any OriGen confidential or proprietary information of any kind.
I confirm that I have not connected with any OriGen client, prospective client, or business partners outside the scope of my employment with OriGen.

I have signed the termination certification sent to me on Monday 02/02/2026.  I am not executing the new certification you attached because it is beyond what is legally required, and in particular I am not willing to assume responsibility for the Company's legal fees,
though I can confirm I am aware of and will abide by my legal obligations to OriGen.


Daniel

1

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Monday, February 9, 2026 6:20 PM |
| **To:** | 'hajali.ameer@gmail.com' |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |
| | |
| **Importance:** | High |

Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi.  He has refused to comply with our demands to return the stolen data and has refused to sign the requisite certifications.  Furthermore, his response contained demonstrably false statements regarding his possession and use of OriGen's proprietary data—falsehoods that our forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no assurances from UniversalAGI that it intends to respect OriGen's intellectual property rights.  We must interpret your silence, combined with UniversalAGI's active recruitment for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation that your company intends to proceed with employing Dr. Badawi during the restriction period in his contracts with OriGen to replicate OriGen's trade secrets for use in a competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent the misappropriation of our trade secrets.
If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in this manner, please contact me immediately.

Regards,
John

---

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

**Powell Decl. Ex. D**

## Powell, John

| | |
|---|---|
| **From:** | Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> |
| **Sent:** | Monday, February 9, 2026 7:09 PM |
| **To:** | Powell, John |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna; Ameer Haj Ali; Netser, Idan |
| **Subject:** | FW: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |
| **Attachments:** | Fwd: Breach of Obligations to OriGen.AI, Inc. |

**\*\*CAUTION\*\*  External Email**

John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*


**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

*************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*************************************************************************************
---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi /
Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna <AVolkov@mmwr.com>


Ameer,


It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in OriGen's cease-
and-desist letter.


We have received a response from Dr. Badawi.  He has refused to comply with our demands to return
the stolen data and has refused to sign the requisite certifications.  Furthermore, his response
contained demonstrably false statements regarding his possession and use of OriGen's proprietary
data—falsehoods that our forensic logs definitively refute.


We have received no response from UniversalAGI, and therefore have received no assurances from
UniversalAGI that it intends to respect OriGen's intellectual property rights.  We must interpret your
silence, combined with UniversalAGI's active recruitment for a "Founding Reservoir Engineer" to build a
"PINN-surrogate model," as confirmation that your company intends to proceed with employing Dr.
Badawi during the restriction period in his contracts with OriGen to replicate OriGen's trade secrets for
use in a competing reservoir simulation product.


Consequently, we are proceeding with the legal actions described in my letter, including seeking
immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent the misappropriation of
our trade secrets.

If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in this manner,
please contact me immediately.

Regards,

John




**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

Physics at the Speed of AI
Youtube | LinkedIn

**Powell Decl. Ex. E**

<O> UniversalAGI

## Open Positions (0)

<u>Filter Open Positions...</u>

Powered by **Ashby**    Privacy Policy    Security    Vulnerability Disclosure

**Powell Decl. Ex. F**

**Powell, John**

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Tuesday, February 10, 2026 3:17 PM |
| **To:** | Rebecca Lynn Stuart |
| **Subject:** | Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |

Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John


On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:


**\*\*CAUTION\*\*** External Email

John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously,

1

especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*


**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

*****************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*****************************************************************************************

---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna <AVolkov@mmwr.com>


Ameer,


It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in OriGen's cease-and-desist letter.


We have received a response from Dr. Badawi. He has refused to comply with our demands to return the stolen data and has refused to sign the requisite certifications. Furthermore, his response contained demonstrably false statements regarding his possession and use of OriGen's proprietary data—falsehoods that our forensic logs definitively refute.


We have received no response from UniversalAGI, and therefore have received no assurances from UniversalAGI that it intends to respect OriGen's intellectual property

rights.  We must interpret your silence, combined with UniversalAGI's active recruitment for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation that your company intends to proceed with employing Dr. Badawi during the restriction period in his contracts with OriGen to replicate OriGen's trade secrets for use in a competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent the misappropriation of our trade secrets.

If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in this manner, please contact me immediately.

Regards,

John

<MMWR_Attorney_01_large_03.png>

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

<MMWR_Attorney_01_large_06.png>

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

3

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

**Powell Decl. Ex. G**

## Powell, John

| | |
|---|---|
| **From:** | Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> |
| **Sent:** | Tuesday, February 10, 2026 3:24 PM |
| **To:** | Powell, John |
| **Subject:** | Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |

**\*\*CAUTION\*\*** External Email

I'm in a meeting then but can do 2:30/5:30

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com



---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 12:17:04 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:



John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*


**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

**********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
**********************************************************************************************

---------- Forwarded message ---------

From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by
Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna
<AVolkov@mmwr.com>


Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in
OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi.  He has refused to comply with our
demands to return the stolen data and has refused to sign the requisite
certifications.  Furthermore, his response contained demonstrably false statements
regarding his possession and use of OriGen's proprietary data—falsehoods that our
forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no
assurances from UniversalAGI that it intends to respect OriGen's intellectual property
rights.  We must interpret your silence, combined with UniversalAGI's active recruitment
for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation
that your company intends to proceed with employing Dr. Badawi during the restriction
period in his contracts with OriGen to replicate OriGen's trade secrets for use in a
competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including
seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent
the misappropriation of our trade secrets.
If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in
this manner, please contact me immediately.


Regards,
John


**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
<MMWR_Attorney_01_large_03.png>1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

<MMWR_Attorney_01_large_06.png>

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

**Powell Decl. Ex. H**

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Tuesday, February 10, 2026 4:33 PM |
| **To:** | 'Stuart, Rebecca Lynn' |
| **Subject:** | RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |

That works, thanks.  I'll call you then.

---

**From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Sent:** Tuesday, February 10, 2026 3:24 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

**\*\*CAUTION\*\*** External Email

I'm in a meeting then but can do 2:30/5:30

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 12:17:04 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:

**\*\*CAUTION\*\*  External Email**

John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

****************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
****************************************************************************************

---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by
Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna
<AVolkov@mmwr.com>


Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in
OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi.  He has refused to comply with our
demands to return the stolen data and has refused to sign the requisite
certifications.  Furthermore, his response contained demonstrably false statements
regarding his possession and use of OriGen's proprietary data—falsehoods that our
forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no
assurances from UniversalAGI that it intends to respect OriGen's intellectual property
rights.  We must interpret your silence, combined with UniversalAGI's active recruitment
for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation
that your company intends to proceed with employing Dr. Badawi during the restriction
period in his contracts with OriGen to replicate OriGen's trade secrets for use in a
competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including
seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent
the misappropriation of our trade secrets.
If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in
this manner, please contact me immediately.


Regards,
John

<MMWR_Attorney_01_large_03.png>

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile
<MMWR_Attorney_01_large_06.png>

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High


Daniel,

Please see attached.




--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

**Powell Decl. Ex. I**

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Tuesday, February 10, 2026 6:36 PM |
| **To:** | 'Stuart, Rebecca Lynn' |
| **Subject:** | RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |

Rebecca,

Thanks for the call. As discussed, I am writing to memorialize our agreement that I provide you with screenshots showing the contents of a synced folder my client discovered on Mr. Badawi's work laptop after his departure from OriGen.

Please reply to this email to confirm that you will (1) treat these screenshots as ATTORNEYS EYES ONLY; (2) use them only for purposes of our discussions regarding a potential early resolution that avoids litigation between our clients; (3) in the unlikely event you are asked to produce these documents to any third party, promptly inform us of that request so that we may object; and, (4) if we are successful in resolving this matter with respect to our respective clients, to the greatest extent permitted by law and our ethics rules, destroy any copies of these documents on Sidley's system. If this is acceptable, I will go ahead and send the screenshots.

    <u>What the screenshots show:</u>

    By way of description, the screenshots show the contents of a folder on Badawi's company issued work laptop. OriGen discovered this folder after Daniel's departure from the company as the result of an internal investigation prompted by its discovery that Daniel had been lying to OriGen about whether UniversalAGI was developing or intended to develop applications for the oil and gas industry. (Daniel insisted to OriGen, verbally and in writing, several times, that UniversalAGI was not working int hat sector and had no plans to move into that sector.)

    Unbeknownst to my client, Daniel configured this folder to sync with a personal OneDrive account that he had linked to a personal gmail account he appears to have created for this purpose. In short, **documents saved in this folder on his work desktop became accessible to Badawi outside of OriGen's system**, where he had unfettered freedom to copy them onto back up media, drives, whatever. The folder is titled "Daniel – Personal." There is nothing personal about its contents. As you may be able to discern from the screenshots I will send you, the files it contains include the most recent copy he had access to a copy Daniel created of my clients' **complete source code**, as well as other legitimate OriGen trade secrets, including files containing information about **unpublished algorithms developed in house** that OriGen created for its PINN Surrogate models, as well as **experimental data and results** and data about actual underground oil reservoirs which OriGen regards as extremely sensitive. In the litigation, we will be seeking to have a forensic expert analyze as best we can the extent to which Daniel further disseminated or copied this information.

Happy to try to answer questions about what this contains or get your client answers about the contents from my clients if that's useful to getting us aligned here. Thanks again for taking the time.

Thanks,
John

---

**From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Sent:** Tuesday, February 10, 2026 3:24 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)


**\*\*CAUTION\*\*  External Email**

I'm in a meeting then but can do 2:30/5:30

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 12:17:04 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)


Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:

**\*\*CAUTION\*\*** External Email

John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*


**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

*********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*********************************************************************************

---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by
Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna
<AVolkov@mmwr.com>


Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in
OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi.  He has refused to comply with our
demands to return the stolen data and has refused to sign the requisite
certifications.  Furthermore, his response contained demonstrably false statements
regarding his possession and use of OriGen's proprietary data—falsehoods that our
forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no
assurances from UniversalAGI that it intends to respect OriGen's intellectual property
rights.  We must interpret your silence, combined with UniversalAGI's active recruitment
for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation
that your company intends to proceed with employing Dr. Badawi during the restriction
period in his contracts with OriGen to replicate OriGen's trade secrets for use in a
competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including
seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent
the misappropriation of our trade secrets.
If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in
this manner, please contact me immediately.


Regards,
John


<MMWR_Attorney_01_large_03.png>

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

<MMWR_Attorney_01_large_06.png>

---

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

**Powell Decl. Ex. J**

**Powell, John**

---

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Tuesday, February 10, 2026 7:30 PM |
| **To:** | 'Stuart, Rebecca Lynn' |
| **Subject:** | RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |
| **Attachments:** | CONFIDENTIAL - ATTORNEYS EYES ONLY.zip |

Thanks, Rebecca.  Please see the attached.  I have not named every file with the AEO designation but trust you will agree that the designation on the zip file is sufficient.

Everything shown here is something that the employee surreptitiously took out of my client's audited SOC 2 Type II certified secure environment and onto a personal OneDrive cloud that probably costs $15/month, the security of which we can only hope is not breached.  My client asked me to highlight both the extensive files of code (I believe these are primarily the .PY files and the folder of security keys.  We have half a dozen written policies in place that explicitly forbidding this on which Daniel received regular trainings and for which he signed regular acknowledgements.

---

**From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Sent:** Tuesday, February 10, 2026 6:49 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

**\*\*CAUTION\*\*  External Email**

We are confirmed. Thanks

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 3:36:15 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>

**Subject:** RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Thanks for the call.  As discussed, I am writing to memorialize our agreement that I provide you with screenshots showing the contents of a synced folder my client discovered on Mr. Badawi's work laptop after his departure from OriGen.

Please reply to this email to confirm that you will (1)  treat these screenshots as ATTORNEYS EYES ONLY; (2) use them only for purposes of our discussions regarding a potential early resolution that avoids litigation between our clients;  (3) in the unlikely event you are asked to produce these documents to any third party, promptly inform us of that request so that we may object; and, (4) if we are successful in resolving this matter with respect to our respective clients, to the greatest extent permitted by law and our ethics rules, destroy any copies of these documents on Sidley's system.   If this is acceptable, I will go ahead and send the screenshots.

What the screenshots show:

By way of description, the screenshots  show the contents of a folder on Badawi's company issued work laptop.  OriGen discovered this folder after Daniel's departure from the company as the result of an internal investigation prompted by its discovery that Daniel had been lying to OriGen about whether UniversalAGI was developing or intended to develop applications for the oil and gas industry.  (Daniel insisted to OriGen, verbally and in writing, several times, that UniversalAGI was not working int hat sector and had no plans to move into that sector.)

Unbeknownst to my client, Daniel configured this folder to sync with a personal OneDrive account that he had linked to a personal gmail account he appears to have created for this purpose.  In short, **documents saved in this folder on his work desktop became accessible to Badawi outside of OriGen's system**, where he had unfettered freedom to copy them onto back up media, drives, whatever.  The folder is titled "Daniel – Personal."  There is nothing personal about its contents.  As you may be able to discern from the screenshots I will send you, the files it contains include the most recent copy he had access to a copy Daniel created of my clients' **complete source code**, as well as other legitimate OriGen trade secrets, including files containing information about **unpublished algorithms developed in house** that OriGen created for its PINN Surrogate models, as well as **experimental data and results** and data about actual underground oil reservoirs which OriGen regards as extremely sensitive.  In the litigation, we will be seeking to have a forensic expert analyze as best we can the extent to which Daniel further disseminated or copied this information.

Happy to try to answer questions about what this contains or get your client answers about the contents from my clients if that's useful to getting us aligned here. Thanks again for taking the time.

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Sent:** Tuesday, February 10, 2026 3:24 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

**\*\*CAUTION\*\* External Email**

I'm in a meeting then but can do 2:30/5:30

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 12:17:04 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:


**\*\*CAUTION\*\*** **External Email**

John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation.  You have also asked for access to his personal accounts at the Company's sole request.  As you are aware, he is not required to agree to those provisions.  Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems.  UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information.  It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation).  If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*

4

**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

*******************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*******************************************************************************************
---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by
Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna
<AVolkov@mmwr.com>


Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in
OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi.  He has refused to comply with our
demands to return the stolen data and has refused to sign the requisite
certifications.  Furthermore, his response contained demonstrably false statements
regarding his possession and use of OriGen's proprietary data—falsehoods that our
forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no
assurances from UniversalAGI that it intends to respect OriGen's intellectual property
rights.  We must interpret your silence, combined with UniversalAGI's active recruitment
for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation
that your company intends to proceed with employing Dr. Badawi during the restriction
period in his contracts with OriGen to replicate OriGen's trade secrets for use in a
competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including
seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent
the misappropriation of our trade secrets.
If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in
this manner, please contact me immediately.


Regards,
John

<MMWR_Attorney_01_large_03.png>

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile
<MMWR_Attorney_01_large_06.png>

---

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>; danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

Powell Decl. Ex. K

**Powell, John**

---

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Thursday, February 12, 2026 8:45 AM |
| **To:** | Rebecca Lynn Stuart |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI) |
| **Attachments:** | ~WRD0004.jpg; image001.png; image002.png; image001.png; image002.png; CONFIDENTIAL - ATTORNEYS EYES ONLY.zip |

Rebecca,

We have not heard anything from UniversalAGI since our discussion Tuesday evening.  Do you have any update or response regarding our discussion, the materials we provided, or UniversalAGI's plans with respect to Dr. Badawi?

As we discussed, OriGen has no choice but to take action to protect its rights, source code and trade secrets in Dr. Badawi's possession.
Given the fast approaching start date in UniversalAGI's offer letter to Dr. Badawi, time is of the essence.

Thanks,
John


> On Feb 10, 2026, at 7:29 PM, Powell, John <JPowell@mmwr.com> wrote:
>
>
> Thanks, Rebecca.  Please see the attached.  I have not named every file with the AEO designation but trust you will agree that the designation on the zip file is sufficient.
>
> Everything shown here is something that the employee surreptitiously took out of my client's audited SOC 2 Type II certified secure environment and onto a personal OneDrive cloud that probably costs $15/month, the security of which we can only hope is not breached.  My client asked me to highlight both the extensive files of code (I believe these are primarily the .PY files and the folder of security keys.  We have half a dozen written policies in place that explicitly forbidding this on which Daniel received regular trainings and for which he signed regular acknowledgements.
>
> **From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
> **Sent:** Tuesday, February 10, 2026 6:49 PM
> **To:** Powell, John <JPowell@mmwr.com>
> **Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

**\*\*CAUTION\*\* External Email**

We are confirmed. Thanks

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 3:36:15 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Thanks for the call.  As discussed, I am writing to memorialize our agreement that I provide you with screenshots showing the contents of a synced folder my client discovered on Mr. Badawi's work laptop after his departure from OriGen.

Please reply to this email to confirm that you will (1)  treat these screenshots as ATTORNEYS EYES ONLY; (2) use them only for purposes of our discussions regarding a potential early resolution that avoids litigation between our clients;  (3) in the unlikely event you are asked to produce these documents to any third party, promptly inform us of that request so that we may object; and, (4) if we are successful in resolving this matter with respect to our respective clients, to the greatest extent permitted by law and our ethics rules, destroy any copies of these documents on Sidley's system.   If this is acceptable, I will go ahead and send the screenshots.

> What the screenshots show:
>
> By way of description, the screenshots  show the contents of a folder on Badawi's company issued work laptop.  OriGen discovered this folder after Daniel's departure from the company as the result of an internal investigation prompted by its discovery that Daniel had been lying to OriGen about whether UniversalAGI was developing or intended to develop applications for the oil and gas industry.  (Daniel insisted to OriGen, verbally and in writing, several times, that UniversalAGI was not working int hat sector and had no plans to move into that sector.)
>
> Unbeknownst to my client, Daniel configured this folder to sync with a personal OneDrive account that he had linked to a personal gmail account he appears to have created for this purpose.  In short, **documents saved in this folder on his**

**work desktop became accessible to Badawi outside of OriGen's system**, where he had unfettered freedom to copy them onto back up media, drives, whatever. The folder is titled "Daniel – Personal." There is nothing personal about its contents. As you may be able to discern from the screenshots I will send you, the files it contains include the most recent copy he had access to a copy Daniel created of my clients' **complete source code**, as well as other legitimate OriGen trade secrets, including files containing information about **unpublished algorithms developed in house** that OriGen created for its PINN Surrogate models, as well as **experimental data and results** and data about actual underground oil reservoirs which OriGen regards as extremely sensitive. In the litigation, we will be seeking to have a forensic expert analyze as best we can the extent to which Daniel further disseminated or copied this information.

Happy to try to answer questions about what this contains or get your client answers about the contents from my clients if that's useful to getting us aligned here. Thanks again for taking the time.

Thanks,
John

John Powell | Partner
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Sent:** Tuesday, February 10, 2026 3:24 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

**CAUTION** External Email

I'm in a meeting then but can do 2:30/5:30

**REBECCA STUART**
*Partner*

**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1

Palo Alto, CA 94304
+1 650 565 7017
rebecca.stuart@sidley.com
www.sidley.com

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Tuesday, February 10, 2026 12:17:04 PM
**To:** Stuart, Rebecca Lynn <rebecca.stuart@sidley.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)

Rebecca,

Do you have a few minutes to discuss around 5 pm ET/2 pm PT today?

Thanks,
John


**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

---

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

On Feb 9, 2026, at 7:09 PM, Stuart, Rebecca Lynn <rebecca.stuart@sidley.com> wrote:




John,

Sidley represents UniversalAGI.  Please address all forward-looking correspondence to me on this matter.

Initially, I will note that your letter was to Daniel and requested a response from Daniel.  I did not see a request for a response from UniversalAGI, which is why we didn't prepare one.

Daniel did respond and provided all the assurances your letter requested as well as the signed termination certification.  I have reattached his response for your convenience.

4

As I understand it, Daniel was not willing to execute your newly drafted affirmation because it contains a noncompete provision that is ineffective against him as a matter of law as he will be a CA resident, and requires that he pay the Company's attorneys' fees for its investigation. You have also asked for access to his personal accounts at the Company's sole request. As you are aware, he is not required to agree to those provisions. Nevertheless, the remainder of the affirmation – Sections 2-4 – are confirmed by his signature on the termination certificate.

Daniel has not started employment with UniversalAGI and has no access to its systems. UniversalAGI neither wants nor expects to use any of OriGen's confidential or proprietary information. It is well aware of Daniel's obligations to OriGen and has reminded him – multiple times, in writing – not to bring any such information onto UniversalAGI's systems.

Our information, including in the response Daniel provided to you today, is that he has not misappropriated any OriGen confidential or proprietary information and has, to date, complied with all of your client's requests (with the exception of the over-reaching provisions of the affirmation) If the Company were to become involved in litigation it would defend itself vigorously, especially given that it has no access to any such information, has confirmed it will not take or use such information, and has not even begun to employ the individual at issue.

I am happy to discuss if you'd like to call.


**REBECCA STUART**
*Partner*


**SIDLEY AUSTIN LLP**
+1 650 565 7017
rebecca.stuart@sidley.com

*******************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*******************************************************************************************
---------- Forwarded message ---------
From: **Powell, John** <JPowell@mmwr.com>
Date: Mon, Feb 9, 2026 at 3:20 PM
Subject: RE: Breach of Obligations to OriGen.AI, Inc. ( URGENT: Non-Compliance by Daniel Badawi / Imminent Legal Action Against UniversalAGI)
To: hajali.ameer@gmail.com <hajali.ameer@gmail.com>
Cc: Heffernan, Edward J. <EHeffernan@mmwr.com>, Volkov, Anna <AVolkov@mmwr.com>


Ameer,

It is now more than an hour past 5:00 p.m. ET, the deadline for compliance set forth in OriGen's cease-and-desist letter.

We have received a response from Dr. Badawi. He has refused to comply with our demands to return the stolen data and has refused to sign the requisite certifications. Furthermore, his response contained demonstrably false statements regarding his possession and use of OriGen's proprietary data—falsehoods that our forensic logs definitively refute.

We have received no response from UniversalAGI, and therefore have received no assurances from UniversalAGI that it intends to respect OriGen's intellectual property rights. We must interpret your silence, combined with UniversalAGI's active recruitment for a "Founding Reservoir Engineer" to build a "PINN-surrogate model," as confirmation that your company intends to proceed with employing Dr. Badawi during the restriction period in his contracts with OriGen to replicate OriGen's trade secrets for use in a competing reservoir simulation product.

Consequently, we are proceeding with the legal actions described in my letter, including seeking immediate injunctive relief against both Dr. Badawi and UniversalAGI to prevent the misappropriation of our trade secrets. If we have misinterpreted your silence and UniversalAGI **does not** intend to proceed in this manner, please contact me immediately.

Regards,
John

<MMWR_Attorney_01_large_03.png>

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profil
<MMWR_Attorney_01_large_06.png>

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee o
agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying o
this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete thi
message from your computer as well as any storage device(s). Thank you

**From:** Powell, John
**Sent:** Sunday, February 8, 2026 11:58 PM
**To:** 'daniel.db1988@gmail.com' <daniel.db1988@gmail.com>;
danielbadawi8@gmail.com
**Cc:** 'hajali.ameer@gmail.com' <hajali.ameer@gmail.com>
**Subject:** Breach of Obligations to OriGen.AI, Inc.
**Importance:** High

Daniel,

Please see attached.

--
Ameer Haj Ali
Founder & CEO
UniversalAGI
ameer@universalagi.com

<~WRD0825.jpg>
Physics at the Speed of AI
Youtube | LinkedIn
<mime-attachment>

**Powell Decl. Ex. L**

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Thursday, February 12, 2026 9:35 AM |
| **To:** | 'Daniel Badawi' |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | RE: Breach of Obligations to OriGen.AI, Inc. |

Dr. Badawi,

While you state that you have "confirmed" certain facts, a review of OriGen's forensic logs and system records demonstrates that several of the assertions in your email are factually false. Our basis for concluding that these statements are false is set forth immediately below. Ultimately, your continued false representations to OriGen, taken in the context of your prior demonstrably false statements to OriGen since you first advised the company of your intention to accept a competing job offer on January 30, 2026—including for example, your repeated assurance that the company, which itself does not contest the fact that it intends to attempt to build a PINN-surrogate driven software platform for reservoir simulation in the oil and gas industry, and your prior false statements at the time of your departure that you had executed and would return your termination certification, and your failure to disclose before your departure your use of an unauthorized USB drive and personal OneDrive account, despite having several opportunities to do so—make it impossible for OriGen to reasonably rely upon your representations to us about what you have done and intend to do with the massive trove of OriGen trade secrets currently in a OneDrive controlled through your personal Gmail account danielbadawi8@gmail.com. The disclosure of those materials to your prospective employer or any other third party presents an immediate, irreparable, and existential threat to OriGen which we have no choice but take legal action to address.

*False Statements Regarding the Termination Certification.* You claim that you had "signed the termination certification sent to me on Monday 02/02/2026." This is untrue. DocuSign records definitively show that while you viewed the document on February 3, you did not execute it at that time. In fact, the envelope history confirms you did not sign the document until **7:47 PM on February 9**—hours *after* you sent your email claiming it was already done.

*The False Termination Certification.* The termination certification you executed on Monday evening is itself demonstrably false. By executing it, you purport to certify that you have returned and destroyed all OriGen information in your possession, and yet your email below states the opposite: that you have a OneDrive folder containing OriGen's source code and trade secrets the contents of which have not changed since the company discovered in on Friday, and that you are refusing the company's demand that you comply with your restrictive covenants and intend to bring your knowledge of OriGen's trade secrets to a new employer which, *despite your repeated false representations to the contrary on January 30, February 1, February 2,* itself does not dispute that it intends to compete with OriGen in the market for PINN Surrogate driven AI software for reservoir simulation in the oil and gas industry.

*False Statements Regarding USB Device.* You assert that you connected a USB drive on "Sunday 02/01/2026" solely to upload personal PDFs and that the laptop "blocked" it. This is contradicted by the forensic data. The Windows system logs (specifically the setupapi.dev.log) on your OriGen laptop record that a "General UDisk" USB mass storage device was connected and drivers were installed on **Friday,**

**January 30, 2026, beginning at approximately 8:53 PM**. This activity occurred shortly after you contacted David Castiñeira to demand a salary increase, and two days *before* the date you claim you first tried to use the drive.  The logs indicate multiple connection events that evening (e.g., 20:53:14, 20:53:19, 20:53:51). Your narrative that you only attempted to use the drive on Sunday is demonstrably false.

<u>False Statements Regarding OneDrive Synchronization.</u> You claim you were "never aware" of the personal OneDrive connection, suggesting it was "automatically" connected by Microsoft and that you never "intentionally" used it to copy files.  These assertions are not remotely plausible.  ***First,*** a connection to a personal OneDrive account labeled "Daniel – Personal" requires a deliberate manual login sequence, including entering a specific email address, password, and typically completing Two-Factor Authentication (2FA). It does not happen "automatically."  ***Second***, the forensic screenshots of your OneDrive folder reveal a highly organized directory structure (e.g., Documents > projects > Rubialas_optim_simulator) containing OriGen's proprietary source code, Python scripts, and encryption keys. The presence of folders such as optimization and Economic_optim, along with files like run_opm_parallel and passbolt_recovery_kit, demonstrates that this was not an accidental sync of generic folders, but a targeted exfiltration of OriGen's most sensitive trade secrets. ***Third,*** although OriGen's complete forensic review and investigation of your work laptop are still underway, but metadata for the "documents" folder within that OneDrive file structure states that that you added files to that folder at approximately 8:30 a.m. on Monday, February 2, 2026—immediately before OriGen recovered your work laptop and removed your access to its systems.  We know of no plausible innocent explanation for your activity in this folder—which we later discovered to contain OriGen's extremely valuable source code—immediately before you left Origen to go a company that you knew to be a competitor but misrepresented to OriGen as involved in an entirely different field.  You have had repeated opportunities to inform OriGen of this OneDrive account before your departure from the company.  You did not do so.  ***Fourth***, your system settings show that OneDrive notifications were enabled. It is not credible that you were unaware of the massive synchronization of data occurring on your machine.

***Conclusion***:  The forensic evidence in our possession—including system logs, DocuSign audit trails, and screenshots of your synced cloud folders—directly refutes your explanations. You have misappropriated OriGen's trade secrets and breached your contractual obligations.  We intend to proceed with the filing of a complaint and application for injunctive relief in federal court.

Sincerely,
John Powell

---

**From:** Daniel Badawi <danielbadawi8@gmail.com>
**Sent:** Monday, February 9, 2026 2:36 PM
**To:** Powell, John <JPowell@mmwr.com>
**Subject:** Re: Breach of Obligations to OriGen.AI, Inc.



Hello,

I am in receipt of your letter dated February 8, 2026.

Per your requests, I can confirm that I have an iPhone, a USB drive, and a personal OneDrive (that I knew about from your last email) which were previously connected to my OriGen's work laptop.

1. The Phone was only used to access my OriGen email, slack, and authentication apps.
2. The USB was connected on Sunday 02/01/2026. I connected it to upload some personal PDFs related to my university and taxes. OriGen laptop blocked (or did not read) the USB, so I unplugged and replugged it again (two or three times) with no success. On the following day, Monday 02/02/2026, I asked Ruben and Alberto if they would allow me to upload these PDFs to my google drive, they agreed, and I did it in front of them.

3. Regarding my personal OneDrive that is connected to the work laptop. I was never aware of this until I saw your email. I never intentionally used OneDrive at work nor I intentionally connected my personal account to the laptop. There is a good chance that at the beginning of my employment Microsoft automatically connected this to my personal OneDrive. Regardless, I confirm that I was never aware of this, nor have I ever used the OneDrive to access, copy, edit, or move any files. If you give me permission I can check if I still have access.

I confirm that I do not have access to any OriGen confidential information through my Phone, USB. I still need your permission to check the personal OneDrive since I was fully unaware of this.
I confirm that I have not uploaded and do not currently have in my possession any OriGen confidential or proprietary information of any kind.
I confirm that I have not connected with any OriGen client, prospective client, or business partners outside the scope of my employment with OriGen.

I have signed the termination certification sent to me on Monday 02/02/2026.  I am not executing the new certification you attached because it is beyond what is legally required, and in particular I am not willing to assume responsibility for the Company's legal fees,
though I can confirm I am aware of and will abide by my legal obligations to OriGen.


Daniel

**Powell Decl. Ex. M**

**Powell, John**

| | |
|---|---|
| **From:** | Greg Mansell <Greg@manselllawllc.com> |
| **Sent:** | Friday, February 13, 2026 9:01 PM |
| **To:** | Powell, John |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | Re: Origen.AI/Badawi |

**\*\*CAUTION\*\*** **External Email**

John,

I am confirming we are in agreement.

Regards,

Greg Mansell
Direct: (614) 796-4325


On Feb 13, 2026, at 8:45 PM, Powell, John <JPowell@mmwr.com> wrote:

Greg,

Thanks for the call earlier.  This will briefly memorialize our agreement as we understand it.

To avoid the immediate filing of litigation in this dispute, Daniel Badawi agrees (1) that he will not commence work at Universal AGI on Monday and (2) will not access, delete, alter, copy, disclose or transmit any data on the OneDrive linked to Daniel.Badawi8@gmail.com, the thumb drive at issue, or any other OriGen confidential information in his possession, custody, or control through the end of Monday.

Upon receipt of a brief reply from you confirming the above, OriGen agrees that it will hold off on filing its federal complaint for breach of contract, misappropriation of trade secrets, and related claims and its emergency motion for a temporary restraining order and preliminary injunction through the end of Monday.

Please reply with a brief confirmation that Badawi agrees to the above.

Assuming we are in agreement here, I will send you tomorrow a brief statement of OriGen's  demand and proposal for avoiding litigation after Monday for Daniel's consideration.

Thanks,
John

**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
<MMWR_Attorney_01_large_03.png>1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile

<MMWR_Attorney_01_large_06.png>

---

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**Powell Decl. Ex. N**

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Monday, February 16, 2026 4:08 PM |
| **To:** | Greg@mansellllawllc.com |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | OriGen.AI, Inc. v. Badawi |

Greg,

I have conferred with OriGen to determine the minimal acceptable terms OriGen would require to forestall seeking relief in the Court. To avoid litigation, Daniel Badawi must confirm his agreement in writing to all of the terms outlined below.

1. <u>No Employment at UniversalAGI. Compliance and Enforceability of Non-competition Agreement.</u> Daniel must agree that he will abide by his non-competition agreement. He must agree that he will not commence work in any capacity at UniversalAGI (which, considering its job posting attached to my cease-and-desist letter sent to Daniel on February 8, 2026, plainly intends to compete with OriGen). He must acknowledge in writing that any employment by Daniel at UniversalAGI would inevitably result in the disclosure of OriGen trade secrets to that company in violation of his CIIAA. He must reaffirm that he will not work at any other competing company within the restriction period in his CIIAA. He must also agree that he will not seek to invalidate his non-competition agreement in the future by arguing that merely because a prospective employer during his restriction period is located in California. (I believe we can achieve this by including in a settlement agreement that Daniel agrees that the state and federal courts located in New Jersey will have exclusive jurisdiction over any further disputes over the validity or any alleged breach of his non-competition agreement.)

2. <u>Forensic Examination. Payment of Costs.</u> Daniel must agree in writing to provide access to the personal OneDrive account, the USB drive, and any other accounts or devices which were connected to his OriGen laptop to a forensic examination consultant to be identified by OriGen upon consultation with his counsel within 5 days. Daniel must identify all such accounts and devices. After providing access to the forensic examiner, Daniel must certify under penalty of perjury that he has identified all devices and personal accounts that were connected to his work laptop and that he has turned over access to those accounts and devices. After the forensic examiner had confirmed to the parties that it has obtained copies of the information sufficient for its forensic analysis and that all OriGen information can be safely deleted from the accounts and devices it is examining, Daniel must certify under penalty of perjury that Daniel has deleted all copies of OriGen source code and confidential information and trade secrets in his possession, custody or control. Daniel must agree to pay the reasonable costs of forensic examination. To ensure the payment of this cost, he must agree to place $25,000 in an escrow account to be used for this purpose or arrange a payment plan acceptable to the forensic examiner and sufficient to secure its prompt work on this matter.

3. <u>Confirmation and Certification of Third-Party Disclosures.</u> Daniel also must produce to OriGen all communications with UniversalAGI or, in the alternative, information and communications that OriGen reasonably agrees is sufficient to allow OriGen to assess whether any of his

communications with UniversalAGI involved the disclosure OriGen confidential information or source code to that company.  Daniel must also identify all third parties, if any, to whom he disclosed OriGen confidential information, trade secrets, or source code.  He must certify under penalty of perjury that this list is complete.  If Daniel contends that he did not disclose any If he contends that he did not disclose OriGen confidential information to any third party, Daniel must certify this under penalty of perjury.

4. <u>Future Enforcement.</u>  Daniel must agree that he will indemnify OriGen for any attorneys fees and costs arising from any future violation of his CIIAA or the parties' settlement agreement contemplated herein.  He must agree to exclusive jurisdiction over the settlement agreement in New Jersey courts, and must agree to standard severability terms and language permitting the Court to blue pencil the settlement agreement to provide for greatest enforceability permissible under applicable law.

If your client agrees to the terms set forth herein, please advise as soon as possible.  Otherwise, OriGen intends to proceed with seeking enforcement of Daniel's CIIAA in the Court along the lines we discussed last week.

Thanks,
John

**Powell Decl. Ex. O**

## Powell, John

| | |
|---|---|
| **From:** | Greg Mansell <Greg@manselllawllc.com> |
| **Sent:** | Monday, February 16, 2026 10:02 PM |
| **To:** | Powell, John |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | RE: OriGen.AI, Inc. v. Badawi |

**\*\*CAUTION\*\*** **External Email**

John,

At the outset, as we have stated numerous times, Daniel categorically denies any misuse, disclosure, downloading, or transfer of OriGen trade secrets to UniversalAGI or any other third party. This is the real story here: OriGen issued Daniel a work laptop that did not have Microsoft Office apps (e.g. Excel and PowerPoint). Daniel has a personal subscription to office and logged in so he could use Excel and PowerPoint. Unbeknownst to Daniel, when he logged into his personal Microsoft Office account it attached his Microsoft OneDrive account. You can easily research that Microsoft OneDrive is the default save location for documents, pictures, and desktop files in Windows 10/11, as it is designed to automatically back up and sync data to the cloud.  Daniel did not affirmatively select OriGen source code for cloud upload, did not use his personal OneDrive as a vehicle for transfer, and did not access or disseminate OriGen materials during or after his separation. When Daniel asked for an increase in his salary, your client terminated him immediately. Your client's decision to terminate Daniel immediately, without any offboarding process that would have surfaced and remediated this predictable configuration risk, is the reason the issue exists.

Daniel remains willing to resolve this without litigation and to provide credible, court-ready assurances. Your proposed terms are not that. If your client's true goal was to protect the purported trade secrets, it wouldn't rush to file with the Court when Daniel has agreed to every measure requested to actually any concern about the trade secrets.  The demands are punitive, one-sided, and designed to convert an unproven security configuration problem into a de facto non-compete injunction and open-ended personal device inspection. Daniel will not agree to them. That said, Daniel will agree to a prompt, neutral, forensic verification designed to answer the only legitimate questions: whether OriGen files exist outside the work laptop's synced folder, whether any OriGen files were copied to removable media or other devices, and whether any files were shared with third parties. Despite this initially being your main demand, your take it or leave demands now include payment of $25,000 into an escrow account, amongst many other unreasonable terms.

**Immediate preservation required**

Because you are threatening imminent litigation and seeking extraordinary relief, OriGen must immediately preserve evidence in its possession, custody, or control. This includes a forensically sound, read-only preservation of Daniel's former work laptop in its current state, including the OneDrive client artifacts, OneDrive activity logs, Windows event artifacts, USB connection artifacts, and any logs OriGen claims support its conclusions. OriGen also must preserve any screenshots, exports, or other captures of OneDrive "All activity" or "Details" information that OriGen intends to rely upon. Microsoft's own documentation confirms that the OneDrive "All activity" summary is time-limited and shows activity for only the last 30 days, after which it is no longer visible. In other words, delay creates avoidable evidentiary disputes. If OriGen has already viewed that information, it must preserve what it saw.

Daniel likewise will preserve his personal OneDrive account and all relevant devices and will not delete, scrub, or alter anything pending neutral imaging under an agreed protocol.

**Your proposed "minimal acceptable terms" are unreasonable**

First, Daniel will not agree to a blanket ban on employment at UniversalAGI, will not concede the enforceability of any non-competition provision, and will not stipulate to "inevitable disclosure." Those are merits issues. They are not a prerequisite to confirming what actually happened on devices. If OriGen believes it can meet its burden for extraordinary relief, it can test that in court. But OriGen cannot demand that Daniel surrender his livelihood and his legal defenses as the price of permitting reasonable verification. In any event, courts in New York City (New York law applies to the restrictive covenants at issue here) have held that restrictive covenants are not enforceable where the employer cannot demonstrate a continued willingness to employ the employee, including where the employee is terminated without cause. Daniel was laid off immediately, and OriGen's attempt to impose a one-year employment ban through settlement pressure is inequitable and improper.

Second, Daniel will not consent to an OriGen-selected examiner with open-ended access to "any other accounts or devices connected" to the laptop, nor will he sign blanket perjury certifications in advance of an examination that has not yet occurred. Those demands are disproportionate and appear calculated to invade privacy rather than verify narrow facts.

Third, Daniel will not pay OriGen's investigator on OriGen's terms, will not post a $25,000 escrow, and will not accept an arrangement that functions as pre-judgment security for OriGen's threatened fee-shifting. If OriGen wants a third-party forensic process, it should be neutral, scoped, and costed accordingly. Cost allocation can be addressed fairly once the scope is agreed and the work is complete, with a reasonable cap and a reallocation mechanism depending on findings.

Fourth, Daniel will not produce "all communications" with a prospective employer. That is breathtakingly overbroad, invades privacy, and would inevitably sweep in irrelevant personal and privileged material. OriGen is entitled to verification that no OriGen information was disclosed. That can be accomplished through a narrow forensic process and a targeted certification without a fishing expedition into every communication with a third party.

Fifth, Daniel will not agree to one-way indemnification, one-way fee shifting, or forum selection provisions designed to lock in OriGen's preferred venue and foreclose defenses. Any settlement terms must be mutual, reasonable, and tethered to legitimate interests.

**Daniel's counterproposal: prompt neutral forensic verification and narrow certifications**

To move this to resolution, Daniel proposes the following, effective immediately upon written agreement:

1.  The parties jointly retain a neutral, reputable forensic examiner within three business days. The examiner will be selected by mutual agreement from two to three proposed vendors, each providing standard rates and a short work plan.
2.  The examiner will follow a narrowly tailored protocol, that uses hash-matching and metadata-first reporting and prohibits review or disclosure of contents except as strictly necessary to confirm the presence of OriGen materials or sharing events.
3.  Devices in scope will be limited to: (a) the OriGen work laptop (image collected from OriGen, not from Daniel), (b) the specific USB device at issue, (c) Daniel's personal phone, and (d) Daniel's personal OneDrive account solely for the purpose of determining whether OriGen files were shared externally and whether the relevant files appear on any other device through OneDrive synchronization. No other devices or accounts will be searched absent a specific, articulable basis tied to a hash match or other concrete indicator.
4.  Daniel will provide a written statement identifying the specific devices and accounts in scope and confirming that he will preserve them pending imaging. After the examiner's imaging is complete and the examiner confirms it has sufficient data to perform the analysis, Daniel will provide a sworn certification that he has not disclosed OriGen confidential information or source code to any third party and has not used any OriGen materials for the benefit of any competitor. If the examiner identifies no external sharing and no OriGen files on the USB device or phone, Daniel will further certify that any OriGen materials identified as residing only in a synced folder on the work laptop were not intentionally transferred by him to personal devices or third parties.

5. Until the examination is complete, Daniel will not delete anything. After the examination is complete, any deletion or remediation will occur only pursuant to a written, mutual remediation plan recommended by the examiner.

6. Costs will be handled as follows: the parties will split the examiner's fees 50/50 up to a mutually agreed cap. If the examiner finds evidence of external sharing to third parties or evidence that OriGen source code or confidential files were copied to the USB device or Daniel's phone, the parties can address reallocation in good faith at that time. Daniel will not post escrow.

7. Pending completion of the forensic review, Daniel will agree to a reasonable standstill on use and disclosure, including an undertaking that he will not access or rely upon any OriGen files and will comply with ongoing confidentiality obligations. OriGen, in return, will agree to forbear from seeking emergency relief while the neutral process proceeds on the expedited schedule above.

If OriGen is truly interested in determining the facts and avoiding litigation, it should accept a neutral, bounded verification process rather than attempt to impose a non-compete injunction by ultimatum. Please confirm by return email whether OriGen will proceed on this basis. If OriGen instead files, we will present the Court with this correspondence to demonstrate that Daniel offered immediate, proportional verification and that OriGen chose escalation over a reasonable path to the truth.

Regards,

Greg Mansell
(614)796-4325 (Direct)

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Monday, February 16, 2026 4:08 PM
**To:** Greg Mansell <Greg@mansellawllc.com>
**Cc:** Heffernan, Edward J. <EHeffernan@mmwr.com>; Volkov, Anna <AVolkov@mmwr.com>
**Subject:** OriGen.AI, Inc. v. Badawi

Greg,

I have conferred with OriGen to determine the minimal acceptable terms OriGen would require to forestall seeking relief in the Court. To avoid litigation, Daniel Badawi must confirm his agreement in writing to all of the terms outlined below.

1. <u>No Employment at UniversalAGI. Compliance and Enforceability of Non-competition Agreement.</u> Daniel must agree that he will abide by his non-competition agreement. He must agree that he will not commence work in any capacity at UniversalAGI (which, considering its job posting attached to my cease-and-desist letter sent to Daniel on February 8, 2026, plainly intends to compete with OriGen). He must acknowledge in writing that any employment by Daniel at UniversalAGI would inevitably result in the disclosure of OriGen trade secrets to that company in violation of his CIIAA. He must reaffirm that he will not work at any other competing company within the restriction period in his CIIAA. He must also agree that he will not seek to invalidate his non-competition agreement in the future by arguing that merely because a prospective employer during his restriction period is located in California. (I believe we can achieve this by including in a settlement agreement that Daniel agrees that the state and federal courts located in New Jersey will have exclusive jurisdiction over any further disputes over the validity or any alleged breach of his non-competition agreement.)

3

2. <u>Forensic Examination. Payment of Costs.</u>  Daniel must agree in writing to provide access to the personal OneDrive account, the USB drive, and any other accounts or devices which were connected to his OriGen laptop to a forensic examination consultant to be identified by OriGen upon consultation with his counsel within 5 days.  Daniel must identify all such accounts and devices.  After providing access to the forensic examiner, Daniel must certify under penalty of perjury that he has identified all devices and personal accounts that were connected to his work laptop and that he has turned over access to those accounts and devices.  After the forensic examiner had confirmed to the parties that it has obtained copies of the information sufficient for its forensic analysis and that all OriGen information can be safely deleted from the accounts and devices it is examining, Daniel must certify under penalty of perjury that Daniel has deleted all copies of OriGen source code and confidential information and trade secrets in his possession, custody or control. Daniel must agree to pay the reasonable costs of forensic examination.  To ensure the payment of this cost, he must agree to place $25,000 in an escrow account to be used for this purpose or arrange a payment plan acceptable to the forensic examiner and sufficient to secure its prompt work on this matter.

3. <u>Confirmation and Certification of Third-Party Disclosures.</u>  Daniel also must produce to OriGen all communications with UniversalAGI or, in the alternative, information and communications that OriGen reasonably agrees is sufficient to allow OriGen to assess whether any of his communications with UniversalAGI involved the disclosure OriGen confidential information or source code to that company.  Daniel must also identify all third parties, if any, to whom he disclosed OriGen confidential information, trade secrets, or source code.  He must certify under penalty of perjury that this list is complete.  If Daniel contends that he did not disclose any If he contends that he did not disclose OriGen confidential information to any third party, Daniel must certify this under penalty of perjury.

4. <u>Future Enforcement.</u>  Daniel must agree that he will indemnify OriGen for any attorneys fees and costs arising from any future violation of his CIIAA or the parties' settlement agreement contemplated herein.  He must agree to exclusive jurisdiction over the settlement agreement in New Jersey courts, and must agree to standard severability terms and language permitting the Court to blue pencil the settlement agreement to provide for greatest enforceability permissible under applicable law.

If your client agrees to the terms set forth herein, please advise as soon as possible.  Otherwise, OriGen intends to proceed with seeking enforcement of Daniel's CIIAA in the Court along the lines we discussed last week.

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any

dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**Powell Decl. Ex. P**

## Powell, John

| | |
|---|---|
| **From:** | Powell, John |
| **Sent:** | Tuesday, February 17, 2026 10:29 AM |
| **To:** | 'Greg Mansell' |
| **Cc:** | Heffernan, Edward J.; Volkov, Anna |
| **Subject:** | RE: OriGen.AI, Inc. v. Badawi |

Greg,

Thanks for your email. We appreciate your client's stated willingness to resolve this matter; however, his counterproposal is not satisfactory.  As an initial matter, your it is unacceptable because Daniel continues to categorically refuse to honor his non-competition obligations. We cannot agree to an arrangement that leaves him free to commence work for a direct competitor while he remains in possession of our client's most sensitive trade secrets.

Furthermore, we must correct the record regarding your factual assertions, which are directly contradicted by the documentary record and OriGen's systems. First, your assertion that Daniel was "laid off" or "terminated without cause" is simply false. On January 30, Daniel issued an ultimatum demanding a $50,000 raise and immediate relocation. When OriGen declined to meet those demands, he resigned. In his February 1 email to OriGen's CEO, Daniel explicitly stated, "I am moving to a company called UniversalAGI," wished the Company the best, and noted that OriGen "will always be a home" to him. This was a clear resignation notice. Moreover, during his exit meeting in the presence of his Team Lead, Alberto Pumar, Daniel confirmed that he had already accepted the competing offer and stated that he would have remained at OriGen only if the Company had made him a counteroffer. OriGen simply accepted his voluntary resignation.

Second, Daniel's new explanation that the massive exfiltration of OriGen's source code was merely an "inadvertent" sync triggered by his need to use a personal Microsoft Office subscription is neither factual nor plausible. During his entire employment, Daniel never used or transmitted documents in Microsoft Word, PowerPoint, or Excel formats. OriGen uses Google Workspace as its standard productivity suite, and Daniel regularly sent Google Docs, Google Slides, and Google Sheets on a near-weekly basis. Even if exceptional circumstances had required the use of Microsoft products, OriGen provides all employees with an online corporate Microsoft 365 account. There was no legitimate business reason for him to log into a personal Microsoft account on his work computer. Doing so—and certainly linking a personal cloud account to company systems, connecting external USB devices, or copying code—is strictly prohibited by the CIIAA and internal policies that Daniel reviewed and acknowledged via the Drata compliance platform.

Moreover, the "accidental sync" narrative offers no explanation for the fact that Daniel also connected an unauthorized USB mass storage device to his computer multiple times that very same evening as he disclosed his new job offer to OriGen.

Ultimately, OriGen has been provided with a revolving door of contradictory stories and false statements—from misrepresenting the date of the USB connection, to the false claims about executing the Termination Certification, to the misrepresentations about UniversalAGI's business, and now this implausible "inadvertent sync" theory. Given this history, OriGen cannot simply take your client's word

for it, nor can we agree to a limited protocol that leaves him free to commence work at a direct competitor. We believe the only reasonable resolution at this juncture is one we will reach with the Court's assistance.

Because the temporary standstill agreement expired at the end of the day yesterday, we are proceeding with filing our Complaint and Motion for a Temporary Restraining Order today. We remain open to further discussions regarding a resolution, provided those discussions take place in the context of a judicially enforceable Consent Order. We will provide you with courtesy copies of our filings promptly after submission.

Regards,
John

---

**From:** Greg Mansell <Greg@mansellllawllc.com>
**Sent:** Monday, February 16, 2026 10:02 PM
**To:** Powell, John <JPowell@mmwr.com>
**Cc:** Heffernan, Edward J. <EHeffernan@mmwr.com>; Volkov, Anna <AVolkov@mmwr.com>
**Subject:** RE: OriGen.AI, Inc. v. Badawi

 **\*\*CAUTION\*\*** External Email

John,

At the outset, as we have stated numerous times, Daniel categorically denies any misuse, disclosure, downloading, or transfer of OriGen trade secrets to UniversalAGI or any other third party. This is the real story here: OriGen issued Daniel a work laptop that did not have Microsoft Office apps (e.g. Excel and PowerPoint). Daniel has a personal subscription to office and logged in so he could use Excel and PowerPoint. Unbeknownst to Daniel, when he logged into his personal Microsoft Office account it attached his Microsoft OneDrive account. You can easily research that Microsoft OneDrive is the default save location for documents, pictures, and desktop files in Windows 10/11, as it is designed to automatically back up and sync data to the cloud.  Daniel did not affirmatively select OriGen source code for cloud upload, did not use his personal OneDrive as a vehicle for transfer, and did not access or disseminate OriGen materials during or after his separation. When Daniel asked for an increase in his salary, your client terminated him immediately. Your client's decision to terminate Daniel immediately, without any offboarding process that would have surfaced and remediated this predictable configuration risk, is the reason the issue exists.

Daniel remains willing to resolve this without litigation and to provide credible, court-ready assurances. Your proposed terms are not that. If your client's true goal was to protect the purported trade secrets, it wouldn't rush to file with the Court when Daniel has agreed to every measure requested to actually any concern about the trade secrets.  The demands are punitive, one-sided, and designed to convert an unproven security configuration problem into a de facto non-compete injunction and open-ended personal device inspection. Daniel will not agree to them. That said, Daniel will agree to a prompt, neutral, forensic verification designed to answer the only legitimate questions: whether OriGen files exist outside the work laptop's synced folder, whether any OriGen files were copied to removable media or other devices, and whether any files were shared with third parties. Despite this initially being your main demand, your take it or leave demands now include payment of $25,000 into an escrow account, amongst many other unreasonable terms.

**Immediate preservation required**

Because you are threatening imminent litigation and seeking extraordinary relief, OriGen must immediately preserve evidence in its possession, custody, or control. This includes a forensically sound, read-only preservation of Daniel's former work laptop in its current state, including the OneDrive client artifacts, OneDrive activity logs, Windows event artifacts, USB connection artifacts, and any logs OriGen claims support its conclusions. OriGen also must preserve any screenshots, exports, or other captures of OneDrive "All activity" or "Details" information that OriGen intends to rely upon. Microsoft's own documentation confirms that the OneDrive "All activity" summary is time-limited and shows activity for only the last 30 days, after which it is no longer visible. In other words, delay creates avoidable evidentiary disputes. If OriGen has already viewed that information, it must preserve what it saw.

Daniel likewise will preserve his personal OneDrive account and all relevant devices and will not delete, scrub, or alter anything pending neutral imaging under an agreed protocol.

**Your proposed "minimal acceptable terms" are unreasonable**

First, Daniel will not agree to a blanket ban on employment at UniversalAGI, will not concede the enforceability of any non-competition provision, and will not stipulate to "inevitable disclosure." Those are merits issues. They are not a prerequisite to confirming what actually happened on devices. If OriGen believes it can meet its burden for extraordinary relief, it can test that in court. But OriGen cannot demand that Daniel surrender his livelihood and his legal defenses as the price of permitting reasonable verification. In any event, courts in New York City (New York law applies to the restrictive covenants at issue here) have held that restrictive covenants are not enforceable where the employer cannot demonstrate a continued willingness to employ the employee, including where the employee is terminated without cause. Daniel was laid off immediately, and OriGen's attempt to impose a one-year employment ban through settlement pressure is inequitable and improper.

Second, Daniel will not consent to an OriGen-selected examiner with open-ended access to "any other accounts or devices connected" to the laptop, nor will he sign blanket perjury certifications in advance of an examination that has not yet occurred. Those demands are disproportionate and appear calculated to invade privacy rather than verify narrow facts.

Third, Daniel will not pay OriGen's investigator on OriGen's terms, will not post a $25,000 escrow, and will not accept an arrangement that functions as pre-judgment security for OriGen's threatened fee-shifting. If OriGen wants a third-party forensic process, it should be neutral, scoped, and costed accordingly. Cost allocation can be addressed fairly once the scope is agreed and the work is complete, with a reasonable cap and a reallocation mechanism depending on findings.

Fourth, Daniel will not produce "all communications" with a prospective employer. That is breathtakingly overbroad, invades privacy, and would inevitably sweep in irrelevant personal and privileged material. OriGen is entitled to verification that no OriGen information was disclosed. That can be accomplished through a narrow forensic process and a targeted certification without a fishing expedition into every communication with a third party.

Fifth, Daniel will not agree to one-way indemnification, one-way fee shifting, or forum selection provisions designed to lock in OriGen's preferred venue and foreclose defenses. Any settlement terms must be mutual, reasonable, and tethered to legitimate interests.

**Daniel's counterproposal: prompt neutral forensic verification and narrow certifications**

To move this to resolution, Daniel proposes the following, effective immediately upon written agreement:

1. The parties jointly retain a neutral, reputable forensic examiner within three business days. The examiner will be selected by mutual agreement from two to three proposed vendors, each providing standard rates and a short work plan.

2. The examiner will follow a narrowly tailored protocol, that uses hash-matching and metadata-first reporting and prohibits review or disclosure of contents except as strictly necessary to confirm the presence of OriGen materials or sharing events.

3. Devices in scope will be limited to: (a) the OriGen work laptop (image collected from OriGen, not from Daniel), (b) the specific USB device at issue, (c) Daniel's personal phone, and (d) Daniel's personal OneDrive account solely for the purpose of determining whether OriGen files were shared externally and whether the relevant files appear on any other device through OneDrive synchronization. No other devices or accounts will be searched absent a specific, articulable basis tied to a hash match or other concrete indicator.

4. Daniel will provide a written statement identifying the specific devices and accounts in scope and confirming that he will preserve them pending imaging. After the examiner's imaging is complete and the examiner confirms it has sufficient data to perform the analysis, Daniel will provide a sworn certification that he has not disclosed OriGen confidential information or source code to any third party and has not used any OriGen materials for the benefit of any competitor. If the examiner identifies no external sharing and no OriGen files on the USB device or phone, Daniel will further certify that any OriGen materials identified as residing only in a synced folder on the work laptop were not intentionally transferred by him to personal devices or third parties.

5. Until the examination is complete, Daniel will not delete anything. After the examination is complete, any deletion or remediation will occur only pursuant to a written, mutual remediation plan recommended by the examiner.

6. Costs will be handled as follows: the parties will split the examiner's fees 50/50 up to a mutually agreed cap. If the examiner finds evidence of external sharing to third parties or evidence that OriGen source code or confidential files were copied to the USB device or Daniel's phone, the parties can address reallocation in good faith at that time. Daniel will not post escrow.

7. Pending completion of the forensic review, Daniel will agree to a reasonable standstill on use and disclosure, including an undertaking that he will not access or rely upon any OriGen files and will comply with ongoing confidentiality obligations. OriGen, in return, will agree to forbear from seeking emergency relief while the neutral process proceeds on the expedited schedule above.

If OriGen is truly interested in determining the facts and avoiding litigation, it should accept a neutral, bounded verification process rather than attempt to impose a non-compete injunction by ultimatum. Please confirm by return email whether OriGen will proceed on this basis. If OriGen instead files, we will present the Court with this correspondence to demonstrate that Daniel offered immediate, proportional verification and that OriGen chose escalation over a reasonable path to the truth.


Regards,

Greg Mansell
(614)796-4325 (Direct)

---

**From:** Powell, John <JPowell@mmwr.com>
**Sent:** Monday, February 16, 2026 4:08 PM
**To:** Greg Mansell <Greg@mansellllawllc.com>
**Cc:** Heffernan, Edward J. <EHeffernan@mmwr.com>; Volkov, Anna <AVolkov@mmwr.com>
**Subject:** OriGen.AI, Inc. v. Badawi

Greg,

I have conferred with OriGen to determine the minimal acceptable terms OriGen would require to forestall seeking relief in the Court.  To avoid litigation, Daniel Badawi must confirm his agreement in writing to all of the terms outlined below.

4

1. <u>No Employment at UniversalAGI.  Compliance and Enforceability of Non-competition Agreement.</u>  Daniel must agree that he will abide by his non-competition agreement.  He must agree that he will not commence work in any capacity at UniversalAGI (which, considering its job posting attached to my cease-and-desist letter sent to Daniel on February 8, 2026, plainly intends to compete with OriGen).  He must acknowledge in writing that any employment by Daniel at UniversalAGI would inevitably result in the disclosure of OriGen trade secrets to that company in violation of his CIIAA.  He must reaffirm that he will not work at any other competing company within the restriction period in his CIIAA.  He must also agree that he will not seek to invalidate his non-competition agreement in the future by arguing that merely because a prospective employer during his restriction period is located in California.  (I believe we can achieve this by including in a settlement agreement that Daniel agrees that the state and federal courts located in New Jersey will have exclusive jurisdiction over any further disputes over the validity or any alleged breach of his non-competition agreement.)

2. <u>Forensic Examination.  Payment of Costs.</u>  Daniel must agree in writing to provide access to the personal OneDrive account, the USB drive, and any other accounts or devices which were connected to his OriGen laptop to a forensic examination consultant to be identified by OriGen upon consultation with his counsel within 5 days.  Daniel must identify all such accounts and devices.  After providing access to the forensic examiner, Daniel must certify under penalty of perjury that he has identified all devices and personal accounts that were connected to his work laptop and that he has turned over access to those accounts and devices.  After the forensic examiner had confirmed to the parties that it has obtained copies of the information sufficient for its forensic analysis and that all OriGen information can be safely deleted from the accounts and devices it is examining, Daniel must certify under penalty of perjury that Daniel has deleted all copies of OriGen source code and confidential information and trade secrets in his possession, custody or control. Daniel must agree to pay the reasonable costs of forensic examination.  To ensure the payment of this cost, he must agree to place $25,000 in an escrow account to be used for this purpose or arrange a payment plan acceptable to the forensic examiner and sufficient to secure its prompt work on this matter.

3. <u>Confirmation and Certification of Third-Party Disclosures.</u>  Daniel also must produce to OriGen all communications with UniversalAGI or, in the alternative, information and communications that OriGen reasonably agrees is sufficient to allow OriGen to assess whether any of his communications with UniversalAGI involved the disclosure OriGen confidential information or source code to that company.  Daniel must also identify all third parties, if any, to whom he disclosed OriGen confidential information, trade secrets, or source code.  He must certify under penalty of perjury that this list is complete.  If Daniel contends that he did not disclose any If he contends that he did not disclose OriGen confidential information to any third party, Daniel must certify this under penalty of perjury.

4. <u>Future Enforcement.</u>  Daniel must agree that he will indemnify OriGen for any attorneys fees and costs arising from any future violation of his CIIAA or the parties' settlement agreement contemplated herein.  He must agree to exclusive jurisdiction over the settlement agreement in New Jersey courts, and must agree to standard severability terms and language permitting the Court to blue pencil the settlement agreement to provide for greatest enforceability permissible under applicable law.

If your client agrees to the terms set forth herein, please advise as soon as possible.  Otherwise, OriGen intends to proceed with seeking enforcement of Daniel's CIIAA in the Court along the lines we discussed last week.

Thanks,
John



**John Powell** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7298 | Fax: 215-731-3742 | jpowell@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you